THE NASSAU.

· (Circuit Court of Appeals, Second Circuit. May 8, 1911.)

No. 241.

1. FERRIES (§ 29*)—REGULATION—STATUTE PROHIBITING CARRIAGE OF DANGEROUS ARTICLES ON "STEAMER."

A steam ferryboat carrying passengers is a "steamer," and subject to the provisions of Rev. St. § 4472 (U. S. Comp. St. 1901, p. 3050), which prohibits any steamer carrying passengers from carrying certain dangerous articles as freight or stores.

[Ed. Note.—For other cases, see Ferries, Cent. Dig. § 76; Dec. Dig. § 29.*

For other definitions, see Words and Phrases, vol. 7, p. 6655.]

.2. WORDS AND PHRASES—"FREIGHT."

The word "freight" has two meanings, being used to denote the compensation paid to a carrier of goods and also the property carried.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 4, pp. 2973-2976.]

3. FERRIES (§ 29*)—REGULATION—STATUTE PROHIBITING CARRIAGE OF DANGEROUS ARTICLES.

A ferryboat plying between Manhattan and Brooklyn, carrying both passengers and vehicles, ·and charging different rates for loaded and empty vehicles, transported a truck loaded with barrels of kerosene of such grade that it would not ignite at a temperature of 110 degrees Fahrenheit. *Held*, that such carriage was a violation of Rev. St. § 4472, as amended by Act Feb. 27, 1877, c. 69, § 1, 19 Stat. 252 (U. S. Comp. St. 1901, p. 3050), and by Act March 3, 1905, c. 1457, § 8, 33 Stat. 1031 (U. S. Comp. St. Supp. 1909, p. 1117), which prohibits steamers carrying passengers from carrying such article as freight, except "upon routes where there is no other practicable mode of transporting it."

[Ed. Note.—For other cases, see Ferries, Cent. Dig. § 76; Dec. Dig. § 29.*]

4. FERRIES (§ 27*)—POWER TO REGULATE ON NAVIGABLE WATERS—FEDERAL STATUTES.

It is within the maritime powers of ₀Congress to impose regulations on steam ferryboats for the protection of their passengers and crews, although they are operated wholly within a state, where they navigate waters of the United States which are common highways of commerce.

[Ed. Note.—For other cases, see Ferries, Cent. Dig. § 74; Dec. Dig. § 27.*]

Appeal from the District Court of the United States for the Eastern District of New York.

Proceeding in admiralty by the United States against the ferryboat Nassau; the City of New York, claimant. Decree for respondent (182 Fed. 696), and the United States appeals. Reversed.

This cause comes here upon appeal from a decree dismissing a libel filed by the United States for a violation of section 4472, Rev. Stat. U. S. (U. S. Comp. St. 1901, p. 3050) which provides, amongst other things, that:

"No loose hay, loose cotton or loose hemp, camphene, nitroglycerine, naphtha, benzine, benzole, coal oil, crude or *refined* petroleum or other explosive burning fluids or like dangerous articles, shall be carried as freight or used as stores on any steamer carrying passengers. * * * *Refined petroleum*

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which will not ignite at a temperature of less than 110 degrees of Fahrenheit thermometer may be carried on board such steamers upon routes where there is no other practicable mode of transporting it, and under such regulations as shall be prescribed by the board of supervising inspectors with the approval of the Secretary of Commerce and Labor."

This section was amended in 1905 (Act March 3, 1905, c. 1457, § 8, 33 Stat. 1031 [U. S. Comp. St. Supp. 1909, p. 1117]) by the addition of the following clause:

"Nothing in the foregoing or following sections of this act shall prohibit the transportation of gasoline or any of the products of petroleum when carried by motor vehicles (commonly known as automobiles) using the same as a source of motive power. Provided, however, that all fire, if any, in such vehicles or automobiles be extinguished immediately after entering the said vessel. and that the same be not relighted until immediately before said vehicle shall leave the vessel."

It does not appear that the board of supervising inspectors have made any regulations covering the particular transportation with which this case is concerned.

William J. Youngs, U. S. Atty. (W. A. Moore, Asst. U. S. Atty., of counsel), for appellant.

Archibald R. Watson, Corp. Counsel (Theodore Connoly and G. P. Nicholson, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The claimant appellee operates a ferry from the foot of Whitehall street, Manhattan, to the foot of Thirty-Ninth street, Brooklyn, and owns the steam ferryboat Nassau, which is used in the ferry service. Fare is charged those using the ferryboats, the rate varying with the use made —so much for a foot passenger, so much for vehicles of specified kinds and sizes, different rates being charged for loaded and for empty vehicles, and varying also with the number of horses drawing such vehicles. There are also specified rates for automobiles, for led horses or cattle, etc. On March 6, 1909, while on one of her daily trips with 25 passengers aboard, the Nassau carrier a truck, with driver, which contained 10 barrels of refined petroleum which would not ignite at a temperature of 110 degrees Fahrenheit.

The single question presented is whether this was a violation of the section quoted.

[1] The Nassau, being a vessel propelled in whole by steam, is manifestly a steam vessel, or "steamer." The circumstance that it is, as defendant suggests, what is commonly known as the "double-end type of steamboat," or that it has no hold or underdeck, does not make it any less a steamer or steamboat. It belongs, however, to the particular class of steamers which are known as "ferryboats," and it is contended that, although Congress used the comprehensive word "steamer," it did not intend to include this particular class of steamers. Considering the manifest object of the act, which seeks to secure the safety of passengers on steamers, there is no apparent reason why this particular class should have been excluded. Passengers on a steam

ferryboat, which is carrying such things as camphene, naphtha, nitro-glycerine and the others enumerated, are apparently as much exposed to risk and as much entitled to protection as if the steamer were going a few miles up the Hudson river or down the Sound. Nor is it important that, when discussing various rights and duties, courts have frequently referred to ferryboats as "substantially a continuance of the public highway." They are steamers carrying passengers just the same.

[2, 3] It is next contended that the statute does not apply to steam ferryboats, because it is, by its terms restricted to steamers on which the enumerated articles are "carried as freight," it being argued that the truck load of petroleum was not so carried. Many authorities are cited on the brief; but upon examination they are all found to relate to the word "freight," when used to indicate the compensation paid for the service rendered. That word, however, has another meaning. It includes the articles carried, as well as the compensation paid for carrying them. Whether the money paid for the transportation is called "freight," or "toll," or "fare," or what not, articles belonging to one person which are transported by another person for pay, on a vessel owned by him or it, are properly described by the phrase "articles carried as freight." Undoubtedly these barrels of petroleum were carried for pay. The rate of fare charged for an empty truck was increased, because the barrels were on the truck. Moreover, the intent of Congress not to exclude ferryboats from the class "any steamers carrying passengers" is quite clearly indicated by the amendment of 1905. This amendment itself amended an earlier amendment of 1901 (Act Feb. 20, 1901, c. 386, 31 Stat. 799 [U. S. Comp. St. 1901, p. 3050]), also relating to automobiles. The first amendment provided that all fire in such vehicles must be extinguished *before entering* the steam vessel and not relighted until *after leaving* the vessel. In consequence they would have to be hauled on board and hauled off, a matter of much inconvenience, if the steam vessel were a ferryboat, but immaterial if automobiles were being shipped for long distances by other steam vessels. If Congress had not intended by the original statute to keep gasoline and similar dangerous explosives off steam ferryboats carrying passengers, it would not have found it necessary to amend the statute twice in order to except gasoline when carried by motor vehicles.

The evidence does not show that there was, in the language of the statute, "no other practicable mode of transporting" the ten barrels of refined petroleum. Manifestly the truck carrying them could have been driven over one of the bridges to Brooklyn, or they could have been transported by some vessel not carrying passengers. Such modes of transportation would merely have been more inconvenient and expensive.

[4] It is further contended that the maritime powers of Congress do not apply to ferryboats not engaged in interstate commerce, although they are steam vessels navigating waters of the United States which are common highways of commerce, and the legislation is primarily for the purpose of protecting their passengers and crews. On

this branch of the case we concur with the District Judge in the conclusion that the contention is unsound, and do not think it necessary to add anything to his discussion.

Since, however, we do not concur in his conclusion that Congress did not intend to compel ferryboats to adopt the precautions with relation to the carriage of gasoline, petroleum, etc., which they required of other steam vessels carrying passengers, the judgment is reversed, and cause remanded, with instructions to decree in conformity with the views expressed in this opinion.