TRIBUNE REPORTER PRINTING CO. v. HOMER
(QUINN, Intervener.)

No. 3095. Decided November 26, 1917. (169 Pac. 170.)

1. ASSIGNMENTS—GARNISHMENT—UNEARNED SALARY—CITIES. In the absence of statute, unearned salary of a public officer may not be assigned, nor a city garnished for salary of an officer.[1] (Page 155.)

2. ASSIGNMENTS—UNEARNED SALARY—STATUTE. The Legislature by expressly changing, by Comp. Laws 1907, section 3113x, the law that a city may not be garnished for salary of an officer, did not intend to change the law that unearned salary of an officer may not

---

[1] *Chamberlain* v. *Watters*, 10 Utah 298, 37 Pac. 566; *Van Cott* v. *Pratt*, 11 Utah 209, 39 Pac. 827.

be assigned; but the express mention of the one implies the exclusion of the other.[1]   (Page 156.)

3. CONSTITUTIONAL LAW—POWER OF LEGISLATURE—PUBLIC POLICY. Power of the Legislature to determine what shall be public policy is limited only by state and federal Constitutions.   (Page 158.)

Appeal from District Court of Salt Lake County, Third District; *Hon. W. H. Bramel,* Judge.

Action by the Tribune Reporter Printing Company against Thomas Homer; B. B. Quinn intervening.

Judgment for plaintiff.   Defendant and intervener appeal.

AFFIRMED.

*M. M. Warner* for appellants.

*Morgan & Huffaker* for respondent.

THURMAN, J.

The facts in this case are stipulated to be that defendant, Homer, at all times covered by the record was a public officer, to wit, county clerk, of Salt Lake County; that on the 27th day of June, 1916, he assigned his unearned official salary for the month of September of the same year to the intervener, B. B. Quinn, who immediately presented the same to the county auditor, and it was by him accepted and filed; that on the 14th day of August, 1916, plaintiff procured judgment against Homer in the city court of Salt Lake City, and on the 28th day of September, 1916, garnished the sum of $248.90 of the official salary of Homer due and owing to him for official services rendered in said month.   The auditor's return on said garnishment stated:

"That on the 27th day of June, 1916, the defendant assigned his salary for September, 1916, to the said B. B. Quinn."

---

[1] *Jones* v. *Evans,* 39 Utah 291, 116 Pac. 333,

The case was tried to the court without a jury, and judgment rendered for plaintiff. Defendants appeal. The sole question presented is: Was the assignment of the salary from Homer to Quinn valid as against a garnishment proceeding instituted by plaintiff for the satisfaction of its judgment?

Appellant in his brief says:

"There has been a universal rule of law with one or two exceptions, that the unearned salary of public officers could not be assigned, neither was such salary subject to execution or garnishment. It is unnecessary for me to collect and cite the numerous cases to uphold the contention of the defendant that the salary of public officers, as a matter of public policy, are exempt from execution and garnishment, and that such exemption is based upon the same reasons assigned by counsel in his brief for prohibiting the assignment by appellant of his salary."

While this concession by appellant as to what the general law is on this subject renders it wholly unnecessary that we should cite authority to the same effect, yet the following paragraphs from Mechem on Public Officers, which declare the doctrine, are exceedingly instructive. Section 874:

"While the compensation already earned by a public officer may validly be assigned by him, it is settled by a clear preponderance of authority that an assignment of future compensation not yet earned, whether payable by salary or fees, is opposed to public policy and void. 'Salaries,' it is said in one case, 'are, by law, payable after work is performed, and not before, and, while this remains the law, it must be presumed to be a wise regulation, and necessary, in the view of the lawmakers, to the efficiency of the public service. The contrary rule would permit the public service to be undermined by the assignment to strangers of all the funds appropriated to salaries. It is true that, in respect to officers removable at will, this evil could in some measure be limited by their removal when they were found assigning their salaries; but this is only a partial remedy, for there would still be no means of preventing the continued recurrence of the same difficulty. If such assignments are allowed, then the assignees, by notice to the government, would, on ordinary principles, be entitled to receive pay directly and to take the place of their assignors in respect to the emoluments, leaving the duties as a barren charge to be borne by the assignors. It does not need much reflection or observation to understand that such a condition of things could not fail to produce results disastrous to the efficiency of the public service.' "

Section 875:

"It is well settled that the public, whether it be the United States, state, or municipal government such as that of counties, townships, cities, and school districts, cannot be charged in garnishment or attachment for the compensation due to its public officers. This exemption is based upon public policy, and is not for the benefit of the officer, but for that of the public, that the latter may not be harassed or inconvenienced by suit against it, and that the efficiency of its servants be not interfered with by any uncertainty as to their payment."

See, also, 4 Cyc. 19, 20 Cyc. 990; *Chamberlain* v. *Watters,* 10 Utah, 298, 37 Pac. 566; *Van Cott* v. *Pratt,* 11 Utah, 209, 39 Pac. 827.

It being both established and conceded that it is a general law of this country, unless modified by statute, that an assignment by a public officer of his unearned official compensation is against public policy and void, and that a garnishment proceeding to subject such compensation to satisfy a judgment obtained against such officer is subject to the same infirmity, we next proceed to determine whether or not the general law above stated has been changed or modified by the statutes of this state. Comp. Laws Utah 1907, section 3113x, reads as follows:

"The state of Utah, or any county, city, town, district, board of education, or other subdivision of the state, or any officer, board, or institution, or either of the same having in possession or under control any credits or other personal property of, or owing any debt to the defendant in any action, whether as salary or wages, as a public official or employee, or otherwise shall be subject to attachment, garnishment, and execution under such rights, remedies, and procedure as are or may be made applicable by statute to attachment, garnishment, and execution, respectively, in other cases, except as hereinafter provided."

It will be observed that this statute changes the general law above referred to as far as garnishments, attachments, and executions are concerned, and renders the official compensation of public officers subject to such proceedings, but we know of no statute of this state which changes the general law above

referred to relating to assignments by public officers of their official compensation before the same becomes due and payable. But it is urged by appellants, with great force, and with an ingenuity that challenges admiration, that by the enactment of this statute legalizing garnishments, etc., in cases of this kind, the reason for holding assignments in such cases invalid no longer exists.   If we were a legislative body dealing with this question as a subject of legislation, we might be in a better position to appreciate the logic of appellants' contention.   But the function of this court being solely to declare what the law is, and not what the court thinks it ought to be, it is readily seen that our duties restrict us to a narrower field of thought and investigation.   The question naturally arises: Did the Legislature, by changing the general law relating to garnishments, etc., of the compensation of public officers, as declared by the great weight of judicial authority, likewise intend to change the law relating to assignments of such compensation before the same became due and payable?   If it did, why did it not so declare?   What reason have we to believe the Legislature so intended?   Is it not more reasonable to presume that, having the general law before it relating to both garnishments and assignments, the Legislature deliberately intended to change the law as to the one, and to leave the other as it existed before?   The express mention of one thing implies the exclusion of another.   While this may not be a typical illustration of the maxim, ''Expressio unius est exclusio alterius,'' it nevertheless falls within its principle.   It has been so considered and applied by this court in the case of *Jones* v. *Evans,* 39 Utah, 291, 293, 116 Pac. 333.   Appellant took his appeal within six months from the time he received written notice of the official judgment, but not within six months from the time the judgment was entered.   The statute requires the appeal to be taken within six months from the time the judgment is entered.   Appellant in that case cited the statutes providing that the time within which to file a notice of intention to move for a new trial or prepare and serve a bill of exceptions begins to run when written notice is served, and not before.   Reasoning from analogy, appellant contended that the time within

which to take an appeal did not begin to run until written notice of the judgment was served. Replying to this contention of appellant, Chief Justice Frick, speaking for the court, said:

"In view that the Legislature provided for the service of notice of the decision of the court to set the time running for the purpose of filing a motion for a new trial, and also for the purpose of preparing and serving a bill of exceptions, but did not require the service of such notice for the purpose of setting in motion the time within which an appeal must be taken, is a circumstance from which it is legitimate to infer that, while the Legislature required such notice for the former purposes, it did not intend to require it for the latter purpose."

The court then proceeds to give other reasons for the distinction made by the statute. So in this case other reasons than the fact that the statute changes the law as to the one, and not to the other, might be given. The Legislature may have been influenced by conditions existing at the time, and considered it prudent policy to protect creditors against the improvidence and indifference of such public officers as might seek to take advantage of their position, and thus avoid the payment of their debts, or it may have intended, by subjecting the compensation of a public officer, when due, to garnishment or attachment proceedings, to thereby place the creditor in a position at least as advantageous as that of other persons to whom the officer might assign or pay his compensation when due; for it is not within the contemplation of this opinion that, even under the law as it now stands, a public officer may not assign his compensation, if he chooses, whenever the same has been earned and becomes payable. Whatever may have been the reasons prompting the Legislature to make the distinction it did make, it is sufficient to say it made the distinction, and, having made it, it is impossible for us to draw a conclusion favorable to appellants' contention.

Appellants make the further contention that the statute above quoted "is unconstitutional and void as against public policy." Appellants do not inform us of any provision of the Constitution which is violated by the statute. In fact, they present no reason for that contention. As regards          3

Appeal from Third District.

the proposition that it is against public policy, and therefore void, it must be remembered that matters of public policy are clearly within the province of the Legislature. The Legislature has power to determine what they shall be, and in the exercise of this power it is limited only by the state and federal Constitutions.

We find no error in the record.

The judgment is affirmed; respondent to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.