Argued March 8, reversed March 20, 1928.

# S. J. KAMINSKY *v.* JAMES GOOD ET AL.

### (265 Pac. 786.)

**Assignments—Assignment by Person Engaged in Public Service of Remuneration, in Anticipation of Its Being Earned, is Void as Against Public Policy, Though Compensation Already Earned may be Assigned.**

1. Assignment by person engaged in public service of salary, wages, fees or other remuneration, in anticipation of its being earned, is void as against public policy, though a public officer may validly assign compensation already earned by him.

**Assignments—Captain of Ferry-boat Operated by County, Who was Required to Take Oath Under Federal Statute, Held "Public Officer" Within Meaning of Law.**

2. Captain of ferry-boat operated by county by virtue of legislative enactment, who was required to qualify under United States statute and take an oath therein prescribed, *held* "public officer" within meaning of law, in view of Revised Statutes, Sections 4131, 4188, 4444, 4450; Compiled Statutes, Sections 7707, 7774, 8206, 8212; 46 U. S. C. A., Sections 59, 215, 221, 239; United States Compiled Statutes, Sections 7835, 7907, 8187, 8200, 8208; 33 U. S. C. A., Sections 62, 158; 46 U. S. C. A., Sections 224, 232.

**Ferries—Operation of Ferry-boat Propelled by Steam on Navigable Stream is "Navigation," and Regulated by Federal Statute.**

3. Navigation of vessels on navigable stream includes "navigation" of ferry-boat propelled by steam and is regulated by statutes of United States.

**Assignment—Assignment of Unearned Salary by Captain of Ferry-boat Operated by County Held Contrary to Public Policy.**

4. Assignment of unearned salary by ferry-boat captain employed to navigate county owned ferry-boat *held* contrary to public policy.

**Garnishment—It is Requisite of Right to Hold Person as Garnishee That, but for Garnishment, Defendant Would have Right of Action Against Garnishee for Own Use.**

5. It is a general requisite of right to hold person as garnishee that, but for garnishment, defendant would have right of action against garnishee for defendant's own use.

---

1. Assignment of unearned salary of public officer, see notes in 4 Ann. Cas. 423; 10 Ann. Cas. 636; Ann. Cas. 1913B, 1080; 5 L. R. A. (N. S.) 565. See, also, 2 R. C. L. 605. Effect of assignment of unearned salary of public officer to put the same when earned beyond the reach of creditors, see note in 31 L. R. A. (N. S.) 374.

2. See 22 R. C. L. 373.

Garnishment—Plaintiff Garnishing County for Salary of Ferry-boat Captain Which had been Paid Out to an Assignee Held not Entitled to Recover, Notwithstanding Assignment was Invalid (Or. L., § 258).

6. Where county, as permitted by Section 258, Or. L., was garnished for salary of ferry-boat captain which it had paid under his assignment to another, *held*, that since captain, because of the assignment, though in fact invalid, was not in position to recover judgment at time garnishment was served, plaintiff could not recover.

Appeal and Error, 4 C. J., p. 1186, n. 63.
Assignments, 5 C. J., p. 866, n. 38, p. 872, n. 70.
Garnishment, 28 C. J., p. 44, n. 93, p. 93, n. 57, p. 181, n. 2.
Officers, 29 Cyc., p. 1364, n. 28.

From Hood River: FRED W. WILSON, Judge.

Department 2.

This case involves a garnishment of defendant Good's salary, and was tried by the court without a jury upon stipulated facts. A judgment was rendered in favor of Multnomah County, the garnishee. Plaintiff appeals.

The gist of matter stipulated in addition to formal statements of the corporate character of the county, and official character of some of its officers is as follows: On January 15, 1913, plaintiff duly obtained a judgment against defendant Good in the Circuit Court for Hood River County for the sum of $439.91, with interest, and for $100 as attorney's fees, which remains unsatisfied, except to the amount of $20. On November 26, 1918, a writ of execution was issued on the judgment directed to the sheriff of Multnomah County. On November 30th of that year said sheriff, under the writ, duly levied upon and garnished all

6. Salaries of public officers as subject to garnishment, see note in 17 Ann. Cas. 525. See, also, 12 R. C. L. 802. Liability of county to garnishment, see note in 3 Ann. Cas. 180. See, also, 12 R. C. L. 842.

debts, money, property rights and credits in the hands of Multnomah County, or its clerk, or under its or his control belonging or owing to defendant Good, for wages or salary as an employee of the county for the months of April, May, June, July, August, September, October and November, 1918, and any warrant or check issued therefor.

That during the time mentioned, Good was engaged in the performance of his duties for the county as pilot and master of a steam ferry-boat, in full charge and command thereof, and was responsible for the safe and proper navigation of the boat. That he was duly licensed to operate a ferry-boat and steam vessels upon the Columbia River and tributaries between Oregon City, Oregon, and Cascades, Oregon, and to Kalama, Washington, for a period of five years from November 7, 1917.

That the act of Congress of the United States requires every master and pilot, before entering upon his duties, to take an oath prescribed by the United States statute.

That during the months named the said St. Johns ferry-boat, on its second shift, and while under the command and operation of said defendant James Good, made about 4,686 trips and transported approximately 12,787 commercial vehicles, approximately 23,746 pleasure vehicles and 217,481 passengers.

That Captain Good as such pilot of said St. Johns ferry-boat earned from said county of Multnomah during April, 1918, the sum of $125, during June, 1918, the sum of $139.33, during July, 1918, the sum of $130, during August, 1918, the sum of $130, during September, 1918, the sum of $145, during October,

1918, the sum of $145, and during November, 1918, the sum of $145.

It is alleged on behalf of the county, and not controverted, in substance as follows: On April 9, 1918, Good, for value in writing, assigned all the money to be earned by him during said month of April to M. M. Bloch, and appointed said M. M. Bloch as his agent and attorney for the collection and recovery of said money, which assignment was then filed with the county clerk. Subsequent to April 30, 1918, the county paid the salary for April pursuant to the assignment and power of attorney to Bloch.

On June 12, 1918, Good in writing appointed Henry S. Westbrook "as agent and receiver" to collect from the county all money earned and to be earned for the months of June to November, 1918, both inclusive by Good as such pilot and master, and in writing authorized Westbrook to collect from the county all money earned during said months by Good as such pilot, and for value for the purpose of effectuating the agency and receivership, sold and assigned to Westbrook in writing all of said earnings past and future of said Good. Fifty dollars out of each month's salary was to be retained by Westbrook for the benefit of Good's creditors.

The county commissioners were duly notified thereof, and the assignment and power of attorney was filed with the county clerk; and thereafter, when the same became due, and before the service of the garnishment process, in accordance with the directions contained in the assignment, and power of attorney, and in reliance thereon, the county paid to Westbrook for Good all of the money earned by Good during the months of June to October, both inclusive.

After the garnishment and during December, 1918, the county because of, and in accordance with, the directions contained in said assignment, and pursuant thereto, and in reliance thereon, paid, and caused to be paid, to the said Henry S. Westbrook all the money earned during the month of November, 1918, by the said Good.

The trial court found that the payments made by Multnomah County, the garnishee, in accordance with said assignments, constituted a full and complete discharge of said county by said Good, and all persons claiming under him.                        REVERSED.

For appellant there was a brief over the name of *Messrs. Emmons, Emmons & Reeves,* with an oral argument by *Mr. J. J. Fitzgerald.*

For garnishee and respondent there was a brief over the names of *Mr. Stanley Myers,* District Attorney, and *Mr. Samuel H. Pierce,* Deputy District Attorney, with an oral argument by *Mr. Jay H. Stockman,* Deputy District Attorney.

BEAN, J.—1. Plaintiff submits the rule is that an assignment by a person engaged in a public service of his salary, wages, fees or other compensation, in anticipation of such compensation being earned, is void as against public policy, and is supported by the overwhelming weight of authority, both of textwriters and the opinions of the courts in adjudicated cases. Citing 2 R. C. L. 605, § 13; Mechem on Public Officers, § 874; 5 C. J. 872; 4 Cyc. 19, § 6; 2 Am. & Eng. Ency. Law (2d ed.), p. 1035; Greenwood on Public Policy, 351; Story's Equity Jurisprudence, § 1040g; note to 4 Ann. Cas. 423; note to 27 Ann. Cas. 1080; note to 31 L. R. A. (N. S.) 374.

It is contended on behalf of Multnomah County, the garnishee, that Good, while acting in the service of the county as master and pilot of the steam ferryboat on the Willamette River, was not a public officer within the meaning of the law. And further that in any event the county is not liable for the monthly salaries of Good paid to his assignee and by virtue of his power of attorney and accepted by him, after the same were earned and before the notice of garnishment.

We will hereafter refer to the distinction between an assignment of a salary and the acceptance of the money where the salary is drawn by the officer, by virtue of a power of attorney, and the transaction is complete and he has received the benefit thereof. Compensation already earned by a public officer may validly be assigned by him.

A clear preponderance of authority is that an assignment of future compensation not yet earned, whether payable by salary or fees, is opposed to public policy and void. A contrary rule would permit the public service to be undermined by the assignment to strangers of the funds appropriated to salaries. If such assignments are permitted, the officer, in the performance of his duties would no doubt be in the position of one, as per common parlance, "paying for a dead horse." Mechem on Public Officers, § 874; Greenwood on Public Policy, p. 351; 2 R. C. L., p. 605, § 13; *Bliss* v. *Lawrence,* 58 N. Y. 442 (17 Am. Rep. 273, 275); *Tribune Rep. Co.* v. *Homer,* 51 Utah, 153 (169 Pac. 170); *Dunkley* v. *Marquette,* 157 Mich. 339 (122 N. W. 126, 17 Ann. Cas. 523).

The effect of an assignment of unearned salary or fees of a public officer, so as to put the same when earned beyond the reach of creditors, is the subject

of a note in 31 L. R. A. (N. S.), at page 375. The general rule is announced as follows:

"But the general voice of the authorities, both across the water and here, is that no voluntary assignment can be sustained by a public officer, of fees or salary yet to be earned."

See 5 C. J., page 372, Section 42.

2. The next question is, Was defendant Good a public officer within the meaning of the law, preventing him from assigning his unearned salary? The same question has been considered by this court, for a different purpose, in the case of *Albee* v. *Weinberger,* 69 Or. 331 (138 Pac. 859). At page 338 of the Oregon Report, we find a quotation from the opinion *Collins* v. *Mayor,* 3 Hun, 680:

" 'We see no reason to doubt that the plaintiff was an officer. *.* He was required by ordinance to take, and did take, the official oath. * * Probably the true test to distinguish officers from simple servants or employees, is in the obligation to take the oath prescribed by law.' " See, also, *David* v. *Portland Water Com.,* 14 Or. 98 (12 Pac. 174).

The St. Johns ferry-boat was operated by the county of Multnomah by virtue of an enactment of the Oregon legislature. This ferry could not be operated without a licensed master and pilot, who by virtue of his position, by United States statute, was made an officer, and is required to qualify under the United States statute and take an oath therein prescribed.

It is not necessary to find that the defendant Good was an officer under the provisions of Section 3, Article XV of the Constitution of Oregon. See *State* v. *Guglielomo,* 46 Or. 261 (79 Pac. 577, 80 Pac. 103, 7 Ann. Cas. 976, 69 L. R. A. 466). The federal law forbids that the state shall require a master or pilot

to take any other oath of office than that provided
by the federal law.   Section 8206, United States Com-
piled Statutes, Annotated, Revised Statutes, Sec-
tion 4444, Chapter 1, United States Compiled Stat-
utes, Annotated, Section 7707, Revised Statutes,
Section 4131, provides, *inter alia,* that all officers of
vessels of the United States who shall have charge of
a watch including pilots shall in all cases be citizens
of the United States.   "All licenses issued to such
officers shall be for a term of five years."   Rev.
Stats., § 4131.

Section 7774, United States Compiled Statutes,
Annotated, Revised Statutes, Section 4188, provides
that "if any person authorized and required by this
title to perform as an officer, any act or thing, will-
fully neglects to do or perform the same according
to the true intent and meaning of this title, he shall
* * be punished," as provided therein.

Section 7835, United States Compiled Statutes, An-
notated, provides that the word "steam vessel" to
include any vessel propelled by machinery.

Section 7907, United States Compiled Statutes, An-
notated, makes a pilot or master personally liable for
any damage sustained by or to passengers and also
subjects him to the penalty of a fine.

It has been decided by the federal courts that ferry-
boats are subject to all of these rules: *The Columbia,*
92 Fed. 939, Ann. Fed. Cas. No. 284; *The Manhasset,*
34 Fed. 408.

This includes those owned by municipalities: *The
Nassau,* 188 Fed. 46.   Ferry-boats cannot be operated
without a licensed pilot: Section 8187, U. S. Comp.
Stats. Ann.

The board of local inspectors are required to license
and classify the masters and pilots of all steam ves-

sels, and it is unlawful to empower any person or have any person to serve as master or pilot who is not licensed by the inspectors: Section 822, U. S. Comp. Stats. Ann.

By the provisions of Section 8208 of the same statute, a master may also be pilot and but one license is required therefor. Section 8206, United States Compiled Statutes, Revised Statutes, Section 4444, prevents a state or municipal government from imposing upon pilots of steam vessels any obligation to procure a state or other license in addition to that issued by the United States.

The fact that Good was performing a public service as a public officer, but was also employed by the county of Multnomah and received his compensation from the county, while at the same time being an officer under the United States statute, would make him no less a public officer. He was subject to having his license revoked if he wrongfully or unreasonably refused to perform his official duties: Section 8212, U. S. Comp. Stats., Rev. Stats., § 4450.

In *Schmitt* v. *Dooling*, 145 Ky. 240 (140 S. W. 197, Ann. Cas. 1913B, 1078, 36 L. R. A. (N. S.), 881), the syllabus reads thus:

"A public officer being one who renders a public service, or service in which the general public is interested, a municipal fireman is a public officer, as he is charged with the public duty of protecting the property in the municipality from fire, and he cannot assign his unearned salary."

Webster's New International Dictionary defines "officer" to be "one charged with a duty; one who holds an office; a person lawfully invested with an office, whether civil, military or ecclesiastical, or under the state or private corporation or the like."

In *Olmstead* v. *New York,* 42 Super. Ct. (N. Y.) 481, it is said the term "officer" implies "an authority to exercise some portion of the sovereign power of the state, either in making or administering, or executing the laws."

In *Eliason* v. *Coleman,* 86 N. C. 235, it is said:

"The true test of a public office seems to be that it is a part of the administration of government, civil or military."

See, also, *Commonwealth* v. *Bush,* 131 Ky. 384 (115 S. W. 249); Mechem on Public Officers, § 32 et seq.

3, 4. The Willamette River is a navigable stream. The navigation of vessels include the navigation of a ferry-boat propelled by steam and is regulated by the statutes of the United States. The defendant Good, in the performance of his duties, was acting in a public capacity and his services were public. The responsibility in the protection of human lives and property that devolved upon him was exacting and important. Under the United States statute he was an officer, and we think that as such officer it would be contrary to public policy for him to assign an unearned salary. He was not a mere employee. His duties were prescribed in a general way by the law and supervised under the United States statutes.

Under Section 258, Or. L., a county may be garnished. This statute is in derogation of the common-law rule inhibiting garnishing of the state or municipality, which was in force in this state prior to the adoption of that section; and that statute should not be construed so as to abrogate the existing rule against the assignment by public officers or employees of their unearned salaries or wages.

5. It is a general requisite of the right to hold a person as garnishee that, but for the garnishment, the

defendant would have a right of action against such garnishee for the defendant's own use: 28 C. J., § 120.

6. When the garnishment was served upon the county, if the defendant Good could not have collected his salary, then the county is not liable as garnishee. He had not then earned his November salary of $145. It had never been paid to him and the county of Multnomah, according to its answer in this proceeding, is liable to the plaintiff therefor, as to the salaries for the other months, that had been, in effect, paid and delivered to Good, the defendant. Regardless of the invalidity of his assignment, we see nothing in the law to prevent him, after he had earned his salary and a warrant has been drawn from receiving the same, either by himself or through his attorney, and appropriating it to the payment of his debts.

The transaction was completed. Westbrook acted for Good in this matter as to several of the months and if he had not drawn the warrant or salary for those months, Good, himself, would have received the same. Good acquiesced in the transaction and was not in a position to recover judgment or maintain a claim against Multnomah County therefor at the time the garnishment was served. The same may be said of the April salary delivered to Bloch. See *Roesch* v. *Worthen Co.*, 95 Ark. 482 (130 S. W. 553, 31 L. R. A. 374, and note).

Under the direction of Section 3c, Article VII of the Constitution, authorizing this court to change a judgment upon appeal, when it is of the opinion that it can determine what judgment should have been entered in the court below, and direct such judgment to be entered in the same manner, and with like effect, as decrees will be entered in equity cases on appeal, the judgment of the lower court will be reversed and one

directed to be entered in favor of the plaintiff and against Multnomah County, the garnishee, for the sum of $145, with interest thereon at 6 per cent per annum from December 1, 1918.                                    Reversed.

Rand, C. J., and Brown and Belt, JJ., concur.