Argued and submitted June 8, 1990, affirmed on claims for declaratory judgment and malicious prosecution; reversed and remanded on all other claims January 23, 1991

Goffery BEASON,
*Appellant,*

*v.*

F. Douglass HARCLEROAD;
State of Oregon; David Nissman;
Ed Hagen; and Darryl Larson,
*Respondents,*

*and*

LANE COUNTY,
and Tom Yates,
*Defendants.*

(16-88-05084; CA A61042)

805 P2d 700

David C. Force, Eugene, argued the cause and filed the briefs for appellant.

Jas Adams, Assistant Attorney General, argued the cause for respondents. With him on the brief were Dave

Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Plaintiff appeals from a judgment in favor of defendants entered after the court granted their motion for judgment on the pleadings. We affirm in part, reverse in part and remand for further proceedings.

Defendants are the State of Oregon, Lane County District Attorney Harcleroad and Deputy District Attorneys Nissman, Hagen and Larson.[1] The amended complaint contains claims for what plaintiff styles declaratory relief, malicious prosecution, infliction of severe emotional distress, false light invasion of privacy and violation of federal constitutional rights. Within some of these claims, there are multiple counts. Many of the allegations supporting the various claims are imprecise and ambiguous, but for purposes of discussion we have summarized them as best we can.

In May, 1987, Nissman was conducting a grand jury investigation about whether plaintiff had committed the crime of unauthorized use of a motor vehicle. During that investigation, Nissman discovered that plaintiff is a homosexual. Shortly thereafter, Nissman, either directly or with the assistance of one or more of the defendants, told representatives of the news media that plaintiff is a homosexual, has Acquired Immune Deficiency Syndrome (AIDS) and had "induced or compelled other individuals to engage with him in sexual intercourse or other sexual acts, without hygienic protection against infection of such persons and while concealing from such persons that he was suffering from or infected with AIDS." Other than the nature of plaintiff's sexual orientation, those statements were false.

Two months later, Hagen obtained a grand jury indictment charging plaintiff with recklessly endangering another. ORS 163.195(1).[2] Shortly before plaintiff's arraign-

---

[1] Lane County and Lane County Deputy Sheriff Yates were also named as defendants. The court granted their motion for summary judgment, and plaintiff has assigned error to that aspect of the case. However, we dismissed the appeal as to Lane County and Yates.

[2] ORS 163.195(1) provides:

"A person commits the crime of recklessly endangering another person if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person."

ment in August, one or more defendants repeated the statements to the news media, informed them about the indictment and arranged for televised news coverage of the arraignment. The media gave the arraignment extensive coverage.

In January, 1988, Larson, without any advance notice to the media, obtained a dismissal of the charge against plaintiff. The defendant prosecutors did not have, and had not previously had, any admissible evidence to prove the allegations in the indictment. However, they continued to tell the news media that plaintiff is a homosexual, has AIDS and had endangered uninformed sexual partners. Larson told the media that the charge against plaintiff was dismissed because witnesses who had previously agreed to testify against him had later refused to do so.

Defendants filed an amended answer. The allegations are somewhat imprecise. However, a careful reading reveals that, to both the common law tort claims and the federal claims under 42 USC § 1983, defendants allege as affirmative defenses that they "are immune * * * by virtue of a prosecutorial immunity." To all claims, except those for declaratory relief and malicious prosecution, they allege that they are "immune by virtue of an absolute executive privilege as to any and all communication to the media." Other defenses, not relevant to this opinion, are also alleged.

In their motion for judgment on the pleadings, defendants characterize each of plaintiff's claims, other than the claim for declaratory relief, as "based upon his prosecution." The trial court denied the parties' requests for oral argument and resolved the motion in a brief order. Citing *Watts v. Gerking,* 111 Or 654, 228 P 135 (1924), the court granted defendants' motion "in its entirety." Judgment was entered for all defendants on all claims.

The allowance of a defendant's motion under ORCP 21B[3] is proper only when the allegations, taken together, affirmatively show that the plaintiff has no cause of action or that the defendant has a complete defense. *Scott & Payne v. Potomac Ins. Co.,* 217 Or 323, 330, 341 P2d 1083 (1959). We

---

[3] ORCP 21B provides:

"After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings."

must accept the allegations in the pleadings as true. *Salem Sand v. City of Salem,* 260 Or 630, 636, 492 P2d 271 (1971); *Brown v. Insurance Company of North America,* 93 Or App 355, 357, 762 P2d 330 (1988), *rev den* 307 Or 303 (1989).

■    In his first claim, plaintiff seeks a declaratory judgment that (1) the indictment for reckless endangerment was not subject to public inspection between July 28, 1987, and August 17, 1987; (2) between those dates, defendants had a duty not to disclose anything about the indictment, except to the extent necessary to achieve an arrest; (3) defendants breached their duties; (4) defendants acted outside the scope of their duties; and (5) defendants Harcleroad, Nissman, Hagen and Larson were executive officers subject to Executive Order EO-87-20.[4]

"Declaratory judgment is preventive justice, designed to relieve parties of uncertainty by adjudicating their rights and duties *before* wrongs have actually been committed or damages suffered." *LaMarche v. State of Oregon,* 81 Or App 216, 220, 725 P2d 378, *rev den* 302 Or 299 (1986). (Emphasis supplied.)[5] Plaintiff is not seeking a declaration of a nature that lends itself to a final judgment in law, *State Farm Fire and Cas. v. Reuter,* 294 Or 446, 449, 657 P2d 1231 (1983), but rather is seeking a declaration of partial liability against the parties for past actions. That is not appropriate under ORS 28.010 to ORS 28.160. The court did not err in allowing defendants' motion for judgment on the pleadings on that claim, because the allegations affirmatively show that plaintiff is not entitled to declaratory relief.[6]

■    Plaintiff's claim for malicious prosecution is more straightforwardly pled than are his other claims. In it, he

---

[4] By Executive Order, Governor Goldschmidt banned sexual orientation discrimination with respect to employment within and services provided by the Executive Department. On November 8, 1988, the voters, in an initiative, "revoked" the Executive Order. Or Laws 1989, ch 3, § 1; *see Merrick v. Board of Higher Education,* 103 Or App 328, 797 P2d 388 (1990).

[5] We overruled *LaMarche* on other grounds in a case that the Supreme Court ultimately reversed. *Hunter v. State of Oregon,* 84 Or App 698, 703, 735 P2d 1225 (1987), *rev'd* 306 Or 529 (1988). Neither the Court of Appeals nor the Supreme Court decision has any effect on the point for which we cite *LaMarche* here.

[6] We express no opinion about whether plaintiff's legal contentions in the declaratory judgment claims have merit.

alleges that "defendants * * * initiated and procured the prosecution of plaintiff for the crime of reckless endangerment, from the improper motive of malice and contempt for his homosexual activities and orientation, without probable cause to believe he had committed the said crime." That claim is based solely on defendants' decision to initiate a criminal proceeding against plaintiff. Defendants allege by way of affirmative defense that they are entitled to "prosecutorial immunity." Elsewhere in their answer, they admit that they are prosecutors. Prosecutors are immune from liability for civil damages on a malicious prosecution claim as a matter of state law. *Watts v. Gerking, supra.* The trial court did not err in allowing defendants' motion on the malicious prosecution claim, because, taken together, the allegations in the pleadings show that defendants have a complete defense.

Plaintiff's remaining claims blend allegations about the initiation of the criminal prosecution with allegations about defendants' statements to the media. The complaint may be read to involve three separate communications, the first of which began before plaintiff was formally charged with a crime and continued after the criminal charge was dismissed. However, the specific allegations that support the individual counts and claims for relief are unclear. In the section 1983 claims, plaintiff contends that defendants violated his rights to due process and equal protection under various theories. In the common law claims, plaintiff alleges that defendants placed him in a false light and intentionally inflicted emotional distress.

We first address the issue of whether the pleadings, standing alone, permitted the trial court to conclude that defendants are entitled to absolute immunity from civil damages in a section 1983 action under the principles announced in *Imbler v. Pachtman,* 424 US 409, 96 S Ct 984, 47 L Ed 2d 128 (1976). With respect to any action under section 1983, federal law controls both the substantive elements of the claim and all defenses based on immunity. *Martinez v. California,* 444 US 277, 284 n 8, 100 S Ct 553, 62 L Ed 2d 481 (1980); *Tennyson v. Children's Services Division,* 308 Or 80, 85, 775 P2d 1365 (1989).

Two types of official immunity are recognized in claims under section 1983: qualified and absolute. Qualified

immunity is the norm for state executive officials, such as prosecutors. It insulates defendants from liability for civil damages under section 1983 only if their conduct "does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 US 800, 818, 102 S Ct 2727, 73 L Ed 2d 396 (1982). However, a defendant is entitled to absolute immunity from civil damages under section 1983, no matter how clear the federal right violated, for functions that are "integral parts of the judicial process." *Briscoe v. LaHue,* 460 US 325, 335, 103 S Ct 1108, 75 L Ed 2d 96 (1983). Consequently, judges engaging in judicial acts, *Pierson v. Ray,* 386 US 547, 554, 87 S Ct 1213, 18 L Ed 2d 288 (1967), police officers testifying at trials, *Briscoe v. LaHue, supra,* 460 US at 345, and prosecutors initiating and litigating criminal prosecutions, *Imbler v. Pachtman, supra,* 424 US at 431, are entitled to absolute immunity.

■ Arguably, plaintiff's section 1983 claims seek to impose liability, not because defendants initiated criminal proceedings, but because they made one or more statements to the news media. Defendants allege, by way of affirmative defense, that they are entitled to "prosecutorial immunity." The United States Supreme Court has not analyzed whether the function of making media statements is an integral part of the judicial process. Plaintiff argues that *Gobel v. Maricopa County,* 867 F2d 1201 (9th Cir 1989), controls and holds that making statements to the media entitles prosecutors only to qualified immunity.[7] However, in cases in which federal law is applied, Oregon courts are not bound by Ninth Circuit decisions simply because we are within the boundary of that circuit. 1B *Moore's Federal Practice,* ¶ 0.402[1] n 40 (2d ed 1988). Although decisions of inferior federal courts should be considered and are, of course, persuasive on issues that are unresolved by the United States Supreme Court, Oregon courts must engage in their own analysis of federal law and reach their own conclusion. *See Amalgamated Clothing Workers of America v. Richman Brothers Co.,* 348 US 511, 518, 75 S Ct 452, 99 L Ed 600 (1955); *McWhorter v. First Interstate Bank,* 67 Or App 435, 438, 678 P2d 766, *rev den* 297 Or 272 (1984).

---

[7] Other circuits agree. *See, e.g., Powers v. Coe,* 728 F2d 97, 103 (2nd Cir 1984); *Marrero v. City of Hialeah,* 625 F2d 499, 506 (5th Cir 1980), *cert den* 450 US 913 (1981).

The only authority cited by the trial court is *Watts v. Gerking, supra.* However, under *Imbler v. Pachtman, supra,* a court must examine the function served by the conduct that gives rise to a claim for relief and determine whether it is investigative, administrative or quasi-judicial, *i.e.,* integral to the judicial process. Conceivably, there may be situations in which a statement to the media is so closely related to the prosecutor's role as a public advocate in the judicial process that it falls within the quasi-judicial function that *Imbler* identifies. For example, a statement about the decision to prosecute or not to prosecute, to the extent that it explains the prosecutor's legal reasoning or decision-making process, may fall within the quasi-judicial function. On the other hand, a court might conclude that that statement serves merely an investigatory or administrative function, which would entitle the prosecutor only to qualified immunity. *See Forrester v. White,* 484 US 219, 108 S Ct 538, 98 L Ed 2d 555 (1988); *Note,* "Supplementing the Functional Test of Prosecutorial Immunity," 34 Stan L Rev 487 (1982).

■ Nothing in the record suggests that the trial court engaged in the analysis that *Imbler* requires, nor does that analysis appear in any of the briefing. The lack of clarity in the pleadings is so serious that immunity analysis is reduced to little more than a theoretical exercise. For that reason, the trial court should have denied defendants' motion as to the federal claims.[8] Moreover, from their allegation of entitlement to "prosecutorial immunity," it is unclear whether defendants are seeking absolute or qualified immunity. Consequently, the nature of defendants' claimed immunity to the federal claims is not evident from the pleadings.[9] Motions under ORCP 21B should be allowed *only* when the allegations in the pleadings are clear enough to enable a court to recognize and analyze the

---

[8] Defendants cite *Barr v. Matteo,* 360 US 564, 79 S Ct 1335, 3 L Ed 2d 1434 (1959), to support their view that state officials have an "executive privilege" to make defamatory statements and still avoid civil damages in a section 1983 claim. In *Barr,* an employee sued a federal official for libel, a common law claim, for statements made in a media release. *Barr* recognized a defense of executive privilege to the libel claim. *Barr* did not address whether that defense is available to state officials sued for deprivations of constitutional rights. The trial court did not base its decision on *Barr,* nor are the relevant issues adequately briefed by the parties. Given the lack of clarity in the pleadings and the need for remand, we decline to analyze the issue now.

[9] Defendants have cited no federal authority that would entitle the State of Oregon to any form of immunity.

dispositive legal issues. Because pleadings rarely provide that clarity, particularly in complex cases such as this where the law is not fully developed, motions for judgment on the pleadings are not favored. *Salem Sand v. City of Salem, supra,* 260 Or at 636.[10]

■ We turn now to the remaining common law claims. State law controls both the substantive elements and defenses of those claims, including defenses of official immunity and privilege. Defendants argue that *Watts v. Gerking, supra,* gives prosecutors absolute immunity from civil liability regardless of the particular tort theory advanced. We decline to read *Watts* that broadly. The critical factual element of the tort there was the initiation of criminal proceedings. However, one or more of plaintiff's state claims may be based, in whole or in part, on one or more of the prosecutors' various statements to the media. We are aware of no Oregon authority, and defendants have cited none, that analyzes whether, and under what circumstances, a prosecutor's statements to the media entitle a prosecutor to the type of immunity recognized in *Watts.*

■ As a matter of state law, we conclude that the content and timing of those communications are relevant to a court's resolution of whether that function has a sufficient relationship to judicial proceedings to afford a prosecutor quasi-judicial immunity. However, as we observed in our discussion of the federal claims, the lack of clarity in the pleadings makes analysis impossible. Immunity analysis under state law may or may not be identical to the analysis in *Imbler v. Pachtman, supra,* and its progeny, but we need not decide that issue here. Because the pleadings do not show affirmatively that defendants are entitled to quasi-judicial immunity on these claims, the court erred in allowing defendants' motion for judgment on the pleadings.

■ The defense of privilege is analytically distinct. The Supreme Court has recognized that some inferior executive

---

[10] Defendants appear to recognize the weakness of their position. They invite us to look to affidavits submitted by other defendants who moved for summary judgment to "help clarify the factual background of the case." We decline to do so, because motions for judgment on the pleadings must be resolved by looking exclusively at the pleadings. Defendants did not move to make the amended complaint more definite and certain. As moving parties, they must demonstrate that the relevant standards for granting a motion under ORCP 21B are satisfied. Here, those standards were not satisfied.

officials may be entitled to an absolute privilege to make defamatory statements, *Shearer v. Lambert,* 274 Or 449, 547 P2d 98 (1976); *Noble v. Ternyik,* 273 Or 39, 539 P2d 658 (1975), but neither that court nor this one has held whether prosecutors are among those officials. *See Restatement (Second) Torts* § 591.[11] According to the complaint in *Shearer,* the department head of a university wrote a defamatory letter to his superior about the plaintiff, a professor in the department. The department head distributed the letter to other members of the faculty. The plaintiff sued for defamation. The trial court allowed the defendant's demurrer, but the Supreme Court reversed. It said:

> "If this case were to go to trial, it is possible that the evidence would show that defendant was neither required nor authorized to make statements evaluating members of the Department of Physical Education to members of the faculty other than defendant's superior. Were the evidence to show this, defendant would not be entitled to the protection afforded by the privilege. Since the jury could find that the defendant's statement was defamatory and that the publication of the statement to the members of the faculty was not absolutely privileged, the case must be remanded for further proceedings consistent with this opinion." 274 Or at 455. (Footnote omitted.)

The court distinguished cases, such as *Barr v. Matteo, supra* n 8, in which an official is required or authorized to disseminate information to the public through media statements. Defendants argue that they made the statements to the media in their official capacities. However, under *Shearer,* the critical issue is whether defendants were *required or authorized* to make those statements. The pleadings do not show whether prosecutors are required or authorized to make statements to the media. Consequently, defendants were not entitled to judgment on the pleadings on the basis of an executive privilege defense.

Finally, defendants argue that they are entitled to the

---

[11] That section provides:

"An absolute privilege to publish defamatory matter concerning another in communications made in the performance of his official duties exists for

"(a) any executive or administrative officer of the United States; or

"(b) a governor or other superior executive officer of a state."

defense of privilege of an attorney and to discretionary immunity under the Oregon Tort Claims Act. Those defenses were not raised in the amended answer. We decline to address them.[12]

Affirmed on claims for declaratory judgment and malicious prosecution; reversed and remanded on all other claims.

---

[12] We also note that the trial court never ruled on plaintiff's motion to file a second amended complaint, which was filed the day after the court allowed the motion for judgment on the pleadings. As we observed recently, although "ORCP 21B provides for a 'judgment' on the pleadings, ORCP 25 authorizes the court to permit the party against whom the motion was allowed to amend the pleadings." *Soldo v. Follis,* 83 Or App 470, 472 n 1, 732 P2d 72 (1987). On remand, the court should decide plaintiff's motion.