Argued and submitted July 24; resubmitted In Banc December 2, 1992, reversed and
remanded March 24, reconsideration allowed by opinion June 23, 1993
See 121 Or App 389 (1993)

ECUMENICAL MINISTRIES OF OREGON,
Victor G. Atiyeh, Robert W. Straub,
Vern Ryles, Walter D. Pelett,
James W. Knapp and Clair Vandehey,
*Appellants,*

*v.*

OREGON STATE LOTTERY COMMISSION
and James J. Davey, Lottery Director,
*Respondents,*

*and*

OREGON RESTAURANT ASSOCIATION
and Video Lottery Consultants, Inc.,
*Intervenors - Respondents.*

(91C-11532; CA A72455)

849 P2d 532

Rick T. Haselton, Portland, argued the cause for appellants. With him on the briefs were James P. Molloy, Lindsay, Hart, Neil & Weigler, Portland, and James T. Massey, Sisters.

Jack L. Landau, Deputy Attorney General, Salem, argued the cause for respondents. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Mark L. Cushing, Portland, argued the cause for intervenors - respondents. With him on the brief were Jacob Tanzer, Rochelle Lessner, and Ball, Janik & Novack, Portland.

De MUNIZ, J.

Rossman, J., dissenting.

## De MUNIZ, J.

This is an action for declaratory and injunctive relief, in which plaintiffs challenge the constitutionality of statutes that circumscribe video lottery games and the allocation of lottery proceeds. In their first claim, they allege that the Lottery Commission will violate Article XV, section 4(7) of the Oregon Constitution,[1] by implementing ORS 461.215 and ORS 461.217,[2] because "video poker will have the effect of creating casino gambling." In their second claim, they allege that ORS 461.546[3] is unconstitutional, because it

---

[1] Article XV, section 4(7), as amended, provides:

"The Legislative Assembly has no power to authorize, and shall prohibit, casinos from operation in the State of Oregon."

[2] ORS 461.215 was amended by Oregon Laws 1991, chapter 962, § 2. It now provides:

"(1) The Oregon State Lottery Commission may initiate a game or games using video devices, the proceeds from which shall be transferred to the Executive Department Economic Development Fund for allocation as provided by law.

"(2) In the approval and purchase of video lottery games, game terminals and equipment, the lottery commission and any game operator, distributor, retailer or owner shall prefer goods or services that have been manufactured in this state if price, fitness and quality are otherwise equal.

"(3) The lottery commission shall separately record and account for the costs and net proceeds of games operated under this section. At such time as the lottery commission makes the quarterly transfer of net proceeds provided for by ORS 461.540, it shall certify to the Executive Department the amount of such transfer which represents the net proceeds of games provided for in subsection (1) of this section.

"(4) Video lottery terminals operated under authority of the lottery commission are specifically exempted from the provisions of 15 U.S.C. § 1171 to 1177."

ORS 461.217 was enacted by Oregon Laws 1991, chapter 962, § 10. It provides:

"(1) A video lottery game terminal that offers a video lottery game authorized by the Director of the Oregon State Lottery shall be placed for operation only on the premises of an establishment that has a contract with the state lottery as a video lottery game retailer. The terminal must be within the control of an employee of the video lottery game retailer. It shall not be placed in any other business or location.

"(2) A video lottery game terminal shall be placed only on the premises of an establishment licensed by the Oregon Liquor Control Commission with a Class 'A' dispenser, Class 'B' dispenser, Retail Malt Beverage, Restaurant or Seasonal dispenser license. A video lottery game terminal shall be placed only in that part of the premises that is restricted to minors and that is used primarily for the consumption of alcoholic beverages.

"(3) No more than five video lottery machines shall be placed in or on premises described in subsection (2) of this section."

[3] ORS 461.546 provides:

allocates lottery revenues for purposes other than creating jobs and furthering economic development, and it authorizes more than 16% of the revenues to be used for administrative costs.[4]

Defendants and intervenors moved for judgment on the pleadings on both claims. The court concluded that both claims presented only legal issues that could be decided without the development of an evidentiary record, and it granted the motions.[5] We reverse.

Plaintiffs contend that judgment on the pleadings was inappropriate, because evidence is required to discern the meaning of the constitutional term "casino." They also contend that the implementation of "video poker" creates casinos and that the incidental benefits of ORS 461.546 do not satisfy the constitutional requirement that lottery revenues be used for the purpose of creating jobs and furthering economic development. Defendants contend that the statutes

---

"(1) An amount equal to six percent of the net revenue of video lottery games in the county shall be distributed to the county as administrative expenses to be expended as follows:

"(a) Three percent for gaming law enforcement; and

"(b) Three percent for community mental health programs to treat gambling addiction.

"(2) The county shall enter into an intergovernmental agreement with cities in the county for the purpose of providing gaming law enforcement in the cities."

[4] Article XV, section 4(3) provides, in part:

"All proceeds from the State Lottery, including interest, but excluding costs of administration and payment of prizes, shall be used for the purpose of creating jobs and furthering economic development in Oregon."

Article XV, section 4(4)(e) provides, in part:

"The State Lottery shall pay all prizes and all of its expenses out of the revenues it receives from the sale of tickets or shares to the public and turn over the net proceeds therefrom to a fund to be established by the Legislative Assembly from which the Legislative Assembly shall make appropriations for the benefit of the public purpose of creating jobs and furthering economic development in Oregon. At least 84% of the total annual revenues from the sale of all lottery tickets or shares shall be returned to the public in the form of prizes and net revenues benefiting the public purpose."

[5] Defendants and intervenors do not contend that the complaint fails to state a justiciable controversy. Plaintiffs are therefore entitled to a declaration of the parties' respective rights. *See Dry Canyon Farms v. U.S. National Bank of Oregon*, 84 Or App 686, 689, 735 P2d 620 (1987).

"[limit] the availability of video poker in ways that ensure that casinos are never created."[6] They also contend that the allocations in ORS 461.546 are valid, because

"[t]he expenditure of funds for [local law enforcement and gambling addiction programs] undeniably creates jobs and targets social conditions * * * that directly affect the state's efforts to attract business and employment opportunities."

A judgment on the pleadings is appropriate only when the pleadings affirmatively show that the plaintiff is not entitled to relief. *Hawkins v. Conklin*, 307 Or 262, 264, 768 P2d 66 (1988). However, a motion for judgment on the pleadings should be denied if there are disputed issues of material fact, because the motion assumes that the alleged facts are true. ORCP 21B; *Sager v. McClenden*, 296 Or 33, 35, 672 P2d 697 (1983); *Rexius Forest By-Products v. A & R Lumber Sales*, 112 Or App 114, 117, 827 P2d 1359 (1992).

In their first claim, plaintiffs sought a declaration that ORS 461.215 and ORS 461.217 are unconstitutional and requested that the court enjoin the Lottery Commission from implementing the provisions of those statutes. They alleged:

"9.

"[A] primary purpose and effect of [ORS 461.215 and ORS 461.217] is to encourage and expand state-sponsored video poker in the State of Oregon. * * *

"* * * * *

"13.

"When [ORS 461.215 and 461.217 are] implemented, state-sponsored video poker games will be operated solely in bars and other establishments licensed to dispense alcoholic beverages by the Oregon Liquor Control Commission, and will be operated on such premises in conjunction with other gambling games sponsored by Defendants, including but not limited to Keno, 'Breakopen' games, and Sports Action.

"14.

"When [ORS 461.215 and ORS 461.217 are] implemented, state-sponsored video poker will have the effect of creating casino gambling in the State of Oregon, in violation of Art. XV § 4(7) of the Oregon Constitution."

---

[6] ORS 461.217 does not permit an establishment to have more than five video lottery machines.

For the purposes of our review, we assume that the Lottery Commission will implement "video poker" under the authority established by ORS 461.215 and ORS 461.217. Article XV, section 4(7), does not define the term "casino," nor did the voter's pamphlet that accompanied the 1984 lottery initiative. In its order granting defendants' motion for judgment on the pleadings, the court concluded:

> "The reference to the term 'casinos' in Article XV, section 4(7) of the Oregon Constitution is capable of construction in accordance with its common, everyday definition. Based on that construction, neither ORS 461.215 [nor ORS 461.217] violates Article XV, section 4(7) of the state constitution[.]"

Although the court did not indicate what it found to be the "common, everyday definition" of "casino," the parties agree that a determination of their rights depends on the meaning of that term.

Plaintiffs suggest this definition for "casino":

> "An establishment that offers its patrons a variety of on-premises, interactive gambling activities, specifically including 'casino' games, from which the establishment derives substantial income."

Defendants offer this definition:

> "[A] 'gambling house,' a building principally devoted to the activity of gambling."

Each of those contrasting definitions is reasonable. Because the term "casino" is ambiguous, the court could only have discerned what the voters had intended by examining extrinsic materials. *See Lipscomb v. State Bd. of Higher Ed.*, 305 Or 472, 484-85, 753 P2d 939 (1988). Appropriate materials might include dictionary definitions, scholarly treatises, testimony by the drafters of the 1984 initiative and testimony by experts on the gambling industry.[7] Some of those materials may be judicially noticeable, but others are not: *e.g.*, the opinions of experts.

Rather than allowing plaintiffs to present evidence that would have been relevant to the proper determination of

---

[7] This list is for illustrative purposes only. We do not intend our list of examples to be exclusive, nor do we express any opinion on the potential value of any source that may be suggested by our examples.

the meaning of "casino," the court apparently ascribed a plain meaning to the term. In *Beason v. Harcleroad*, 105 Or App 376, 383, 805 P2d 700 (1991), we observed:

> "Motions [for judgment on the pleadings] should be allowed only when the allegations in the pleadings are clear enough to enable a court to recognize and analyze the dispositive legal issues. Because pleadings rarely provide that clarity, particularly *in complex cases such as this where the law is not fully developed, motions for judgment on the pleadings are not favored.*" (Emphasis supplied; original emphasis deleted.)

This is a case where the law is not fully developed, because we have never before had occasion to construe the term "casino." Without an evidentiary record, the trial court could only have speculated about the contours of "casinos" and "video poker." In order to make those determinations, the court would need to know how "video poker" works, how it is played and what, if anything, makes it different from other games that the Lottery Commission conducts. The characteristics of the game are not the sorts of things of which we can take judicial notice.

Plaintiffs are entitled to present evidence to show what "casinos" and "video poker" are and why "video poker" violates the constitutional proscription against "casinos." The court erred by granting the motions for judgment on the pleadings on plaintiffs' first claim.

■ In their second claim, plaintiffs sought a declaration that the allocation of lottery revenues under ORS 461.546 impermissibly earmarks proceeds for the enforcement of gambling laws and for mental health programs designed to treat gambling addiction. They contend that those allocations are inconsistent with the constitutional requirement that lottery proceeds be used for the purpose of creating jobs and furthering economic development. Plaintiffs further contend that any economic benefits of ORS 461.546 are merely incidental effects of the expenditures for mental health programs and gaming law enforcement. They also contend that those allocations exceed the limitation on administrative expenses to 16% of lottery proceeds. Defendants contend that the use of revenues for law enforcement and addiction programs will create jobs and promote economic development.

The court concluded that the allocations identified by the statute do not violate Article XV, section 4(3) of the constitution, because they fall within the rubric of economic development.[8] However, without taking evidence, the court could only speculate whether the revenue allocations authorized by ORS 461.546 are consistent with the economic development requirements of the constitution. Plaintiffs are entitled to present evidence to support their claim that the allocations in ORS 461.546 are not for the purpose of creating jobs and furthering economic development in Oregon. The court erred by granting the motions for judgment on the pleadings on plaintiffs' second claim.

Reversed and remanded.

**ROSSMAN, J.,** dissenting.

The majority's misunderstanding of our responsibility to interpret statutory and constitutional terms has led it to the timorous and erroneous conclusion that this case must be sent back for the taking of evidence.

The parties have presented us with only two issues:

(1) Do ORS 461.215 and ORS 461.217, which implement the Lottery Commission's video poker games, violate Article XV, section 4(7) of the Oregon Constitution by having the effect of authorizing casino gambling?

(2) Does ORS 461.546, which directs that video poker revenues be spent for gaming law enforcement and community mental health programs to treat gambling addiction, violate the constitutional requirements that lottery proceeds be directed to the creation of jobs and the promotion of economic development? Or Const, Art XV, §§ 4(3), 4(4)e.

The majority has interjected a third issue, that being whether we can or should decide the issues presented by the parties. Because I conclude that the constitutional questions that plaintiffs present are ripe and ready to be decided as a matter of law, *and* that they should be decided in plaintiffs' favor, I would reverse the trial court and enter judgment for plaintiffs.

---

[8] The court expressed no opinion about whether the allocations could be considered administrative expenses.

As the majority's author has so aptly said in *Beason v. Harcleroad*, 105 Or App 376, 383, 805 P2d 700 (1991), motions for judgment on the pleadings should be allowed only when the pleadings are clear enough "to enable the court to recognize and analyze the dispositive legal issues." Issues of fact cannot be tried on a motion for judgment on the pleadings. *Salem Sand v. City of Salem*, 260 Or 630, 636, 492 P2d 271 (1971). There is no contention that here the pleadings are unclear; the dispositive legal issues are well apparent. Yet, for some reason, the majority views what are purely legal issues as questions of fact. One of the most basic concepts of jurisprudence is that it is the court's duty to determine the meaning of statutory and constitutional provisions, *as a matter of law. McPherson v. Employment Division*, 285 Or 541, 548, 591 P2d 1381 (1970); *Springfield Ed. Ass'n v. Springfield School Dist. No. 19*, 290 Or 217, 621 P2d 547 (1980); *Monaghan v. School District No. 1*, 211 Or 360, 315 P2d 797 (1957). In that capacity, our sole function is to construe the constitution and the challenged statutes and determine whether a conflict exists between them. Entry of judgment on the pleadings in this case is entirely proper.

The first question focuses on the meaning of the term "casinos" as used in Article XV, section 4(7). Plaintiffs contend that the term must be construed to effectuate the remedial purpose of the constitutional provision. They argue:

> "At a minimum, 'casino' is properly constitutionally defined as: An establishment that offers its patrons a variety of on-premises, interactive gambling activities, specifically including 'casino' games, from which the establishment derives substantial income."

Defendants, on the other hand, appear to read into the term the concept that, to be a casino, the premises on which video poker terminals are located must be devoted primarily to gambling. That, defendants maintain, cannot happen on the OLCC-licensed facilities to which the statutes confine the machines, because those facilities will invariably be dedicated to serving food and drink more than to the statutorily authorized gambling activities.

I am unable to find from where defendants derive their primary-incidental test or their assurance that what the

statutes authorize necessarily survives that test. The background of the constitutional prohibition suggests that the word "casino" has a more restrictive meaning than defendants ascribe to it.[1]

The prohibition of casinos was made part of the Constitution through the same 1984 initiative measure that authorized the state-operated lottery and the sale of lottery tickets for it. *See* Or Const, Art XV, §§ 1, 3, 6. Before the 1984 amendment, Article XV, section 4, prohibited all "Lotteries, and the sale of Lottery tickets." The amendment prohibited "casinos" without defining them. However, the explanation of the measure in the November, 1984, General Election Voter's Pamphlet, at page 20, stated that it would prohibit "casino gambling." Against that background, I agree with plaintiffs that the objective of section 4(7) was remedial, in the sense that it was designed to restrict what the other provisions of the amendment allowed: Certain gambling activities are no longer proscribed, but casino gambling is. That history simply does not support defendants' apparent understanding that section 4(7) was meant to allow the legislature to authorize or permit facilities that are devoted to gambling to any extent that does not exceed 50 percent.

I reiterate that section 4(7) enjoins the legislature from *authorizing* casinos, as well as directs it to prohibit them. Defendants and intervenors contend that the statutes are the wrong target, and that plaintiffs should be restricted to challenging any commission rules that, in fact, have the effect of establishing casinos. I think that the opposite is true. The constitutional restriction is a limitation on the legislature and forbids it from authorizing casinos. If the statutes authorize the creation of casinos, they cannot be saved by the fact that the commission's rules may fail to implement them to the full extent of what they authorize. Because, in my opinion, they authorize the creation of casinos, they are plainly unconstitutional.

---

[1] Ironically, in the face of section 4(7), defendants' argument would treat the term "casinos" less restrictively than does the Nevada Gaming Commission. That commission's Regulation 1.065 defines "casino" as any "room or rooms wherein gaming is conducted and includes any bar, cocktail lounge or other facilities housed therein as well as the area occupied by the games."

No party disagrees that the games that ORS 461.215 and ORS 461.217 authorize include "video poker." Poker is, by statutory definition, a "casino game." ORS 167.117(3).² Although the video poker terminals may be excepted from the definition of "gambling devices" under ORS 167.117(6), because they are operated by the Commission, nonetheless, *the activity of playing poker on them* is casino gambling. In common, everyday plain talk, a casino is a place that offers casino gambling. There is no doubt in my mind that, in passing the 1984 initiative measure, the people of this state intended to prohibit casino gambling. Because video poker is casino gambling, it is prohibited.

Much for these same reasons, I also dissent from the majority's conclusion that the constitutionality of ORS 461.546 is a question that cannot be decided on the pleadings. Additionally, I conclude that the statute is inconsistent with the constitutional provision that limits use of lottery proceeds for the purpose of creating jobs and furthering economic development. Intervenors contend that the allocations made by ORS 461.546 represent administrative costs, because "[lottery games] can cause social detriment, [and] it is rational to regard amelioration as an administrative activity." I have no doubt that intervenors' understanding of the negative social consequences of a state lottery is correct. However, the potential adverse social consequences represent indirect costs that may or may not make it necessary to increase expenditures on law enforcement and mental health treatment. Those expenditures have nothing to do with the implementation of the lottery games themselves and therefore cannot be construed as administrative expenses.

Because the costs relating to the enforcement of gaming laws and providing mental health care are not administrative, the allocation of lottery revenues to them is permissible only if it promotes "the purpose of creating jobs and furthering economic development." Or Const, Art XV, §§

---

² 167.117(3) provides:

" 'Casino game' means any of the traditional gambling-based games commonly known as dice, faro, monte, roulette, fan-tan, twenty-one, blackjack, Texas hold-'em, seven-and-a-half, big injun, klondike, craps, poker, chuck-a-luck, Chinese chuck-a-luck (dai shu), wheel of fortune, chemin de fer, baccarat, pai gow, beat the baker, panquinqui, red dog, acey ducey, slot machine, or any other gambling-based game similar in form or content." (Emphasis supplied.)

4(3), 4(4)(e). Defendants contend that the use of revenues for law enforcement and addiction programs will create jobs and promote economic development. Those potential benefits reflect only a hope for secondary impacts of the spending authorized by ORS 461.546. In my view, lottery proceeds must be allocated to programs that have as their direct and primary purpose the creation of jobs and economic development. Accordingly, I would conclude that ORS 461.546 is unconstitutional. All of the evidentiary hearings in the world won't make that question any clearer than it already is.

In sum, this is a straightforward, facial challenge to the statutes. It presents "plain talk" issues that can be decided by "plain talk." As the Supreme Court has said, the requirement that the courts give effect to an enactment is doubly applicable when the law in question is a constitutional amendment adopted by the voters. *Northwest Natural Gas Co. v. Frank*, 293 Or 374, 381, 648 P2d 1284 (1982). By Article XV, section 4, the voters of this state created the state lottery as a revenue generating device. At the same time, through section 4(7), they placed limits on the use of that device: *no casino gambling*. Additionally, they chose to limit the application of proceeds of the lottery to the creation of jobs and economic development. Art XV, § 4(3). The challenged statutes directly confront those limitations. There is no good reason to delay our inevitable decision on that point. This court is capable of agonizing long and hard over the meaning of statutory terms when necessary. I see no purpose in avoiding that responsibility in this case. We should move forward and decide this case now, and, in my judgment, that means reversing the trial court and entering judgment for plaintiffs.

Edmonds, J., joins in this dissent.