# SHEARER, *Appellant,*
## *v.*
# LAMBERT, *Respondent.*

547 P2d 98

*Ralph W. G. Wyckoff,* Salem, argued the cause and filed briefs for appellant.

*Ridgway K. Foley, Jr.,* of Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, argued the cause and filed a brief for respondent.

Before O'Connell, Chief Justice, and McAllister, Denecke, Holman, Howell and Bryson, Justices.

O'CONNELL, C. J.

**O'CONNELL, C. J.**

This is an action to recover damages for libel. Plaintiff appeals from a judgment in favor of defendant entered after the trial court sustained a demurrer to plaintiff's complaint.

The complaint alleges that plaintiff is an assistant professor of Physical Education at Oregon State University and that defendant is head of the Department of Physical Education; that defendant wrote a letter to Dr. James Long of the Division of Health and Physical Education concerning the plaintiff, which contains the following statements:

> "Roxann Hutchins came to my office on March 6, 1973, complaining that Dr. Shearer's Conditioning class, in which Roxann was a student winter term, had not met 50% of the time.

> "Barbara Harper, a student in Dr. Shearer's Measurement and Evaluation class during the winter term, came to my office on March 16, 1973, to tell me that Dr. Shearer said to the class that there are teachers in this department who pull out a poor evaluation sheet and fill in and substitute another, and that it was *Dr. Shearer* who told the students that some faculty say, 'I'll scratch your back if you scratch mine,' as far as student evaluations go. Barbara wanted me to know that Dr. Shearer told the students this. The students did not tell her that, as she reported in faculty meeting."

The complaint alleges that the letter was forwarded to Dr. James Long "and to other members of the faculty at Oregon State University that have and had no supervisory responsibility over or other professional connection with the plaintiff and was published of and concerning the plaintiff." It is then alleged that the statements in the letter were false; that neither Roxann Hutchins or Barbara Harper came to defendant's office and neither of them made the statements attributed to them in the letter; that the statements were published by defendant maliciously, wilfully and recklessly and with the intent to defame plaintiff and that as a result of the malicious statements plaintiff

[ 451 ]

has been brought to public hatred and ridicule and contempt.

Defendant's demurrer to the complaint apparently was sustained on the ground that the statement, having been made by defendant as a public officer, was absolutely privileged and therefore the complaint failed to state a cause of action.

The complaint alleges, in effect, that defendant's statement is defamatory. The demurrer admits that it is, and we cannot say as a matter of law that it is not. It is, then, a jury question unless plaintiff's action is barred by defendant's assertion of an absolute privilege.

There are conflicting views as to whether an absolute privilege should be extended to executive officers of government who maliciously publish defamatory statements in the course of their official duties.[1] There have been strong attacks upon the rule recognizing an absolute privilege in such circumstances,[2] but in spite of the criticism of the rule the courts have tended to expand the scope of the absolute privilege.[3]

Underlying the rule of absolute privilege is the assumption that to permit suits against public officers would inhibit courageous and independent official action, and the further assumption that the public interest thus served outweighs the interest of persons damaged by the willful and malicious conduct of public officers. We have frequently been called upon to choose between these competing interests in cases involving the conduct of judicial, legislative and executive officers in various levels of authority in each

---

[1] Prosser on Torts § 114, p. 783 (4th ed 1971).

[2] *See Handler and Klein,* The Defense of Privilege in Defamation Suits Against Government Executive Officials, 74 Harv L Rev 44 (1960); Becht, The Absolute Privilege of the Executive in Defamation, 15 Vand L Rev 1127 (1962); Gray, Private Wrongs of Public Servants, 47 Calif L Rev 303 (1959); Note, 48 Corn L Q 199 (1962); Vaughn, The Personal Accountability of Public Employees, 25 Am U L Rev 85 (1975).

[3] Davis, Administrative Law Treatise (1970 Supp.) § 26.07, p. 893.

of these branches of government. In rendering our decisions in these cases we have not overlooked the arguments advanced by the critics of the doctrine of absolute privilege. However, although there is no data which indicates one way or the other whether the recognition of an absolute privilege is necessary to assure fearless action on the part of public officers,[4] we think that the privilege is necessary and therefore, if provision is to be made to compensate persons harmed by official action, it will have to be through some other kind of remedy which still preserves the privilege.[5] Various solutions have been suggested, the most direct of which is to make the government liable for the deliberate torts of its officers.[6]

Since this is an area of tort liability in which compensation is sought for harms arising out of governmental action, it seems reasonable for the court to defer to the legislature for appropriate action, so as to integrate it with the other legislation involving governmental liability for acts performed by public officers.

---

[4] We are not persuaded by the unsupported assertions to the contrary found in Prosser on Torts, pp. 784 and 989 (4th ed 1971).

[5] *But see,* Prosser on Torts, p. 992 (4th ed 1971); and Davis, Administrative Law Treatise (1970 Supp.) § 26.07, p. 893; "Officers should not be free from liability even when they are truly motivated by malice and when they deliberately intend to inflict harm. We need to find ways to impose liability in such cases without at the same time opening the gates to unfounded charges of malice against worthy officers. This can be done by making the government liable for deliberate torts, by allowing the injured party to collect from the government, and by allowing the government to collect from the malicious officer." (Although the idea of imposing liability on the government seems to be a reasonable method of compensating persons harmed by official action, it is difficult to understand how Davis' suggestion would assure fearless action on the part of public officers if they would be held liable to the government for malicious defamation).

[6] *See,* Snouffer, Sovereign Immunity, Suits Against Public Officers and the Dead Letter of Oregon Law, 46 Or L Rev 286 (1967) suggesting that ORS 30.400, providing for actions against certain kinds of public officers, with the amount recovered to "be allowed to him in his official accounts," should be re-examined and be given a broader construction than that previously given in the Oregon cases. Handler and Klein, The Defense of Privilege in Defamation Suits Against Government Executive Officials, 74 Harv L Rev 44 (1960).

Our conclusion that an absolute privilege should be recognized still leaves the question of the applicability of the privilege to various types of governmental officers at various levels of authority or importance. We have extended the absolute privilege to judicial and quasi-judicial officers at all levels. In a case recently decided we held that the privilege was applicable to subordinate legislative bodies including port commissions, school boards, and special service districts.[7]

The question presented in the case before us is whether the privilege should be extended to lesser executive or administrative officers, in this instance the head of a department of a university. The cases in other jurisdictions are in conflict, some courts limiting the privilege to the governor, the attorney general and the heads of state departments whose rank is the equivalent of cabinet rank in the federal government, whereas other courts have extended the privilege to inferior state officers no matter how low their rank or standing.[8] Although we would prefer to confine the absolute privilege to its narrowest possible application, we feel compelled to adopt the latter view because, starting with the premise that the privilege is designed to free public officers from intimidation in the discharge of their duties, we are unable to explain why this policy would not apply equally to inferior as well as to high-ranking officers.[9] We hold, therefore, that an absolute privilege exists in an action brought against the head of a department of a state university.

A final question remains. The complaint alleges that the letter containing the statement made by defendant was forwarded to Dr. James Long, the head

---

[7] *Noble v. Ternyik,* 75 Or Adv Sh 2986, 539 P2d 658 (1975).

[8] Restatement (Second) of Torts (Tentative Draft No. 20, April 25, 1974), § 591, comment c.

[9] The privilege does not apply, however, where the tort arises out of the exercise of a "ministerial" function. The difficulty of drawing the line between "ministerial" and "discretionary" functions again suggests the need for legislation which would provide relief under a principle which would render the distinction unnecessary.

[ 454 ]

of the Division of Health and Physical Education but also "to other members of the faculty of Oregon State University." The privilege is available to a defendant only if he publishes the defamatory matter in the performance of his official duties. If this case were to go to trial, it is possible that the evidence would show that defendant was neither required nor authorized to make statements evaluating members of the Department of Physical Education to members of the faculty other than defendant's superior. Were the evidence to show this, defendant would not be entitled to the protection afforded by the privilege.[10] Since the jury could find that the defendant's statement was defamatory and that the publication of the statement to the members of the faculty was not absolutely privileged, the case must be remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

[10]This is to be distinguished from those cases where the dissemination of information to the public, as through a press release, is deemed to be a part of the officer's duties. See *Barr v. Matteo,* 360 US 564, 79 S Ct 1335, 3 L ed2d 1434 (1959); Prosser on Torts § 115, p. 784 (4th ed 1971).