Argued and submitted January 10, decision of Court of Appeals reversed; judgment of circuit court affirmed May 31, 2002

## David A. DeLONG,
*Petitioner on Review,*

*v.*

## YU ENTERPRISES, INC.,
*Defendant,*

*and*

## Edward S. YU,
*Respondent on Review.*

(CC 16-97-03468; CA A103729; SC S48281)

47 P3d 8

David C. Force, Eugene, argued the cause and filed the briefs for petitioner on review.

Joel S. DeVore, of Luvaas Cobb Richards & Fraser, Eugene, argued the cause and filed the brief for respondent on review.

Steven C. Berman, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Robert M. Atkinson, Assistant Attorney General, Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General, Salem, filed a brief on behalf of *amicus curiae* State of Oregon.

Ken Shiroishi, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

Joshua Marquis, Clatsop County District Attorney, Astoria, filed a brief on behalf of *amicus curiae* Oregon District Attorneys Association.

DE MUNIZ, J.

## DE MUNIZ, J.

The issue in this defamation case is whether a report of an alleged crime to police is subject to a defense of qualified privilege or absolute privilege. The trial court held that the report to the police at issue here enjoyed only a qualified privilege. The Court of Appeals disagreed and held that an absolute privilege applied. *DeLong v. Yu Enterprises, Inc.*, 170 Or App 609, 13 P3d 1012 (2000). We allowed review and now conclude that only a qualified privilege applies to the kind of informal report that was made to the police in this case. Therefore, we reverse the decision of the Court of Appeals and affirm the judgment of the trial court.

We take our statement of facts from the opinion of the Court of Appeals:

"Defendant is part owner of a corporation that operates motels in Springfield. Plaintiff worked as a manager in one of those motels. Plaintiff and defendant became embroiled in a dispute, the details of which are not pertinent. Defendant became upset and fired plaintiff. Defendant then went to the Springfield Police Department and told an officer that, during the time that plaintiff managed the motel, money and hotel property had disappeared. Defendant did not accuse plaintiff of stealing the money or the property, but he did ask that the police investigate.

"The officer investigated and forwarded a report to the district attorney, as was standard procedure. The district attorney told the officer to issue a citation to plaintiff for theft in the second degree, and the officer did so. The district attorney later filed an information charging plaintiff with theft in the second degree. A warrant for plaintiff's arrest followed. Some months later, plaintiff turned himself in to the police. Ultimately, he was released, and the charges against him were dismissed.

"Plaintiff then initiated this action for defamation and malicious prosecution, based on defendant's report to the Springfield police that property and money had been missing during plaintiff's management of the motel. Defendant answered, asserting a defense of absolute privilege. At trial, following the close of plaintiff's case, defendant moved for a directed verdict based on the privilege defense. The trial court took the matter under advisement until the close of

the evidence. At the conclusion of the trial, the court denied the motion, ruling that defendant's statements were subject only to a defense of qualified privilege and that there was a jury question as to the applicability of that defense to the evidence before it. The jury ultimately found for defendant on the malicious prosecution claim, but for plaintiff on the defamation claim."

170 Or App at 611-12.

In the Court of Appeals, defendant argued that the trial court erred in denying its motion for a directed verdict. That court agreed with defendant, holding that a report of an alleged crime to the police is absolutely privileged and reversed the judgment of the trial court. Plaintiff sought review in this court to address the question whether, for purposes of a defamation claim, an informal report to the police of an alleged crime is subject to an absolute privilege or a qualified privilege.

■ Oregon recognizes the defenses of qualified privilege and absolute privilege to allegations of defamation. The former requires a plaintiff to prove that a defendant acted with actual malice; the latter bars the defamation claim altogether. *See Wallulis v. Dymowski,* 323 Or 337, 348, 918 P2d 755 (1996) (so stating); *Moore v. West Lawn Mem'l Park,* 266 Or 244, 249, 512 P2d 1344 (1973) ("[w]hen defamatory matter is absolutely privileged no cause of action exists").

■■ A "qualified privilege" requires the plaintiff to prove that the defendant abused the "privileged occasion." *Wallulis,* 323 Or at 348; *see Bank of Oregon v. Independent News,* 298 Or 434, 437, 693 P2d 35, *cert den* 474 US 826 (1985) ("Where the qualified privilege of 'fair comment and criticism' was applicable, the defendants would not be liable if the publication was made in good faith and without malice."). Generally, a qualified privilege exists to protect three kinds of statements: (1) those made to protect the defendant's interests; (2) those made to protect the plaintiff's employer's interests; or (3) those made on a subject of mutual concern to the defendant and the persons to whom the statement was made. *Wallulis,* 323 Or at 350 (citing *Wattenburg v. United Medical Lab.,* 269 Or 377, 380, 525 P2d 113 (1974)).

■    Historically, this court has recognized the application of an absolute privilege for defamatory statements in very limited circumstances. *See Grubb v. Johnson et al*, 205 Or 624, 631, 289 P2d 1067 (1955) (" '[t]he class of absolutely privileged communication is narrow and is practically limited to legislative and judicial proceedings and other acts of state' "). This court has stated that the absolute privilege applies when "the public's interest in the unhampered operation of the government, when exercising such functions, outweighs an individual's interest in the preservation of reputation." *Wallulis*, 323 Or at 349. Thus, statements that are made as part of judicial and quasi-judicial proceedings are absolutely privileged. *See Binder v. Oregon Bank*, 284 Or 89, 91, 585 P2d 655 (1978) ("Statements made by parties to judicial proceedings are absolutely privileged."); *see also Chard v. Galton*, 277 Or 109, 113, 559 P2d 1280 (1977) (absolute privilege should apply to lawyer's letter to adverse party's insurer made before filing of civil complaint, because "lawyer [should] enjoy the same degree of freedom in settlement of his client's case as that which he enjoys in its actual pleading or trial"); *Moore*, 266 Or at 250-51 (letter written to State Board of Funeral Directors and Embalmers, when that board was sitting in its quasi-judicial function as licensing body, was subject to absolute privilege); *Ramstead v. Morgan*, 219 Or 383, 401, 347 P2d 594 (1959) (absolute privilege attached to statements in letter to Oregon State Bar grievance committee concerning lawyer's alleged misconduct, in light of that committee's quasi-judicial function).

■    Despite having analyzed somewhat related issues in the foregoing cases, this court has not decided specifically that defamatory statements made to police before the initiation of criminal proceedings are subject to an absolute privilege. This court did suggest in *Ducosin v. Mott*, 292 Or 764, 770, 642 P2d 1168 (1982), that an absolute privilege attaches to statements made in certain proceedings even when the proceedings are in an early, investigative phase, and no court or administrative action is yet pending. In *Ducosin*, the defendant, who was in a dispute with the plaintiff over the proceeds of an inheritance, called the county medical examiner and suggested that the plaintiff possibly had poisoned

his own mother, causing her death. An autopsy was performed, and the cause of death was determined to have been natural. The plaintiff then brought an action for defamation against the defendant. This court deemed the defendant's statements to be "cloaked with an absolute privilege," because the communications to a medical examiner regarding a possible homicide were an initial step in a judicial proceeding. *Id.* at 768.

From a historical perspective, the conclusion in *Ducosin* that the absolute privilege applied in those circumstances is somewhat surprising, particularly in light of the prevailing common-law rule that statements accusing others of crime were accorded a qualified rather than an absolute privilege. For example, in *Smith v. Kerr*, 1 Edm Sel Cas 190 (NY Com Pl 1845), *aff'd on other grounds* 1 Barb 155 (NY 1847), the defendant storekeeper stated to the police his belief that his employee had robbed the store of $50.00. The court held that informing the police of a suspicion that plaintiff had committed a robbery was not actionable if the accusation were made in good faith and with probable cause. The court reasoned:

> "In the absence of actual malice, and with probable cause, so strong as very much to alarm and agitate the plaintiff at the time, it presents the simple question whether the communication made to the officer was privileged.
>
> "So far as it was essential or even material, to the purposes for which it was made, viz., the detection of the robber, it was privileged, for full scope should be extended to all concerned in the *bona fide* administration of the criminal law.
>
> "The words spoken were uttered by the defendant in the prosecution of his inquiries for the robber to an officer authorized to search into and make arrests for the offense.
>
> "The purpose was an honest one, and the words were necessary to that purpose. They were uttered in good faith, under a belief of their truth, and with probable cause. They were therefore privileged."

*Id.* (citations omitted). Other cases from that period were in accord, *e.g., Grimes v. Coyle*, 6 B Mon 301 (Ky Ct App 1845);

*Gassett v. Gilbert*, 72 Mass (6 Gray) 94, 97 (1856), as was the first treatise written in the United States on the subject of torts, 1 Francis Hilliard, *The Law of Torts*, 345-46 (3d ed 1866).

The distinction at common law between statements made in court, which carried an absolute privilege, and statements made to the police, which carried a qualified privilege, was based on practical considerations. In court, parties, lawyers, judges, jurors, and witnesses must be free to risk impugning the reputations of others, in order to discharge public duties and protect individual rights. One authority defends the absolute privilege for statements made in court as rooted in sound judicial policy:

> "Absolute privilege has been conceded on obvious grounds of public policy to insure freedom of speech where it is essential that freedom of speech should exist. It is essential to the ends of justice that all persons participating in judicial proceedings (to take a typical class for illustration) should enjoy freedom of speech in the discharge of their public duties or in pursuing their rights, without fear of consequences. The purpose of the law is, not to protect malice and malevolence, but to guard persons acting honestly in the discharge of a public function, or in the defense of their rights, from being harassed by action imputing to them dishonesty and malice."

Van Vechten Veeder, *Absolute Immunity in Defamation*, 9 Colum L Rev 463, 469 (1909) (footnotes omitted).

■       By contrast, a citizen making an informal statement to police should not enjoy blanket immunity from an action; instead, such statements should receive protection only if they were made in good faith, to discourage an abuse of the privilege. *See id.* at 480 (informal communication or rumors or suspicions of criminal action only conditionally protected). One case has explained that the public interest justified a qualified privilege for reports of criminal activity, because

> "when such communications are made in good faith and confidence, and with an honest view and purpose, to the object and end intimated, and is not made as a pretext to cover over secret malevolence or ill will towards the party spoken of, it is proper that they should be made, and the honest portion of the community should be encouraged

rather than restrained from making them, by the terror of legal responsibility."

*Grimes*, 6 B Mon 305. Recognizing a qualified privilege for informal statements made to the police remains the prevailing common-law rule, although some jurisdictions more recently have adopted an absolute privilege. *See Fridovich v. Fridovich*, 598 So 2d 65, 67-68 & n 4 (Fla 1992) (surveying case law of various states).

Because *Ducosin* did not involve informal statements to police officers, we need not decide whether the precise holding in *Ducosin* is one with which this court would agree today. However, to the extent that the *dictum* in *Ducosin* can be read to suggest that such statements are absolutely privileged, it is disavowed. We are satisfied that the prevailing common-law rule—that informal statements to police made before the initiation of criminal proceedings enjoy only a qualified privilege—is the appropriate one.

Consistent with the foregoing analysis, the trial court instructed the jury that plaintiff's defamation claim was subject to a qualified privilege. Defendant did not object to the form of that instruction. We presume that the jury, following that instruction, found that defendant had abused the privilege. *See State v. Thompson*, 328 Or 248, 271, 971 P2d 879 (1999) (jurors are presumed to follow trial court's instructions). Accordingly, there was no error. The Court of Appeals erred in reaching a contrary conclusion.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.