Argued and submitted July 9, affirmed October 23, 2002

Scott CHAMBERLAIN,
*Appellant,*

*v.*

CITY OF PORTLAND,
a municipal corporation,
*Respondent,*

*and*

Suzanne WHISLER,
*Defendant.*

9910-10739; A114690

56 P3d 497

Philip C. Gilbert argued the cause and filed the reply brief for appellant. On the opening brief was Michael R. Dehner.

Harry Auerbach, Senior Deputy City Attorney, City Attorney's Office, argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

In this defamation case, the trial court granted defendant City of Portland's motion for summary judgment based on an affirmative defense of absolute privilege. Plaintiff appeals, contending that the alleged defamer, a Portland police sergeant, did not hold a position that would entitle her to the absolute privilege and that, if she did, she did not qualify for the privilege in this case because the alleged defamation was not the exercise of a discretionary function, and it was not within the scope of her official duties. Viewing the evidence and all reasonable inferences it supports in the light most favorable to plaintiff, the nonmoving party, we conclude that there are no disputed issues of material fact and that the city is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). We therefore affirm.

Plaintiff worked as a police officer in the East Precinct of the Portland Police Bureau. The alleged defamer, Sergeant Suzanne Whisler,[1] was a police sergeant in the Southeast Precinct. Both of those precincts participate in the Explorer Scout program, which introduces interested young people to law enforcement work, and both plaintiff and Whisler, as part of their official duty assignments, worked with their precincts' Explorer "posts." Their duties included accompanying Explorers to conferences and competitions. The events leading to this case stem from one such conference, the 1998 National Law Enforcement Explorer Conference in Washington, D.C. Plaintiff was responsible for coordinating the logistics of the trip and traveled with the contingent of Explorers and officers from the East Precinct. Whisler attended the conference with members of the Southeast Precinct's Explorer post as their advisor.

On returning, Whisler and another officer discussed the trip with their commander. He ordered her to prepare a written report in the form of a memorandum to him. In the

---

[1] Plaintiff's complaint included a claim for defamation against the city in its capacity as Whisler's employer and a claim against Whisler for "Intentional Interference with Economic Relations." The parties stipulated to dismissal of the claim against Whisler, and she is not a party on appeal.

course of composing and finalizing the report, Whisler showed a draft to an officer at another precinct who had also attended the conference as an advisor, seeking his input. When the report was completed, Whisler gave it to her immediate supervisor, who then submitted it to Whisler's commander. That memorandum included statements concerning plaintiff's conduct on the trip and is the basis of plaintiff's defamation claim.

■ Executive officers of public entities have an absolute privilege that, in some circumstances, acts as a complete bar to a claim for defamation. *DeLong v. Yu Enterprises, Inc.*, 334 Or 166, 47 P3d 8 (2002); *Shearer v. Lambert*, 274 Or 449, 453, 547 P2d 98 (1976). Plaintiff argues that, first, Whisler was not an executive officer whose position—police sergeant—put her within the ambit of the privilege and, second, if she was, then the circumstances in this case are such that the privilege does not apply.

■ In *Shearer*, the Supreme Court examined the question whether the head of a department at Oregon State University was an executive officer who could claim the absolute privilege against a charge of defamation. That discussion of the issue disposes of plaintiff's claim that Whisler did not occupy a position qualifying her for the privilege. The court wrote:

"The question presented in the case before us is whether the privilege should be extended to lesser executive or administrative officers, in this instance the head of a department of a university. The cases in other jurisdictions are in conflict, some courts limiting the privilege to the governor, the attorney general and the heads of state departments whose rank is the equivalent of cabinet rank in the federal government, whereas other courts have extended the privilege to inferior state officers no matter how low their rank or standing. Although we would prefer to confine the absolute privilege to its narrowest possible application, we feel compelled to adopt the latter view because, starting with the premise that the privilege is designed to free public officers from intimidation in the discharge of their duties, we are unable to explain why this policy would not apply equally to inferior as well as to high-ranking officers. We hold, therefore, that an absolute privilege exists in an

action brought against the head of a department of a state university."

*Shearer*, 274 Or at 454 (footnotes omitted). Thus, the court "adopt[ed]" the view that the absolute privilege applies to "inferior state officers no matter how low their rank or standing." *Id*. As a sworn police sergeant, Whisler was an executive officer, that is, a person with " 'authority to exercise some portion of the sovereign power of the state, either in making or administrating, or executing the laws.' " *Kaminsky v. Good et al.*, 124 Or 618, 627, 265 P 786 (1928) (quoting *Olmstead v. New York*, 42 Super Ct (NY) 481, 488 (1877)); *see also Buckley v. Valeo*, 424 US 1, 126, 96 S Ct 612, 46 L Ed 2d 659 (1976) ("any appointee exercising significant authority pursuant to the laws of the United States is an Officer of the United States"); *Black's Law Dictionary* 1113 (7th ed 1999) (defining public officer as "a person holding public office under a national, state, or local government, and authorized by that government to exercise some specific function"). And although Whisler was a city officer as opposed to a state officer, we held in *Sandrock v. City of Corvallis*, 58 Or App 312, 648 P2d 382, *rev den*, 293 Or 634 (1982), that a city police captain was an officer who could claim the absolute privilege under proper circumstances. The cases, then, in harmony with well-established definitions of the term "officer," demonstrate that sworn city police officers, under appropriate circumstances, qualify for the absolute privilege.

That conclusion does not end our inquiry because plaintiff argues that, even if Whisler is an executive officer whose position qualifies her to claim the privilege, two circumstances preclude her from obtaining that privilege here: she allegedly defamed plaintiff in the process of exercising a ministerial function as opposed to a discretionary one, and the privilege applies only in the latter situation; and the alleged defamation did not occur in the course of her official duties. We disagree with both assertions.

The argument that the absolute privilege does not apply to actions that are ministerial derives from *dictum* appearing in a footnote in *Shearer*. After deciding that the

Oregon State University department head who had published an allegedly defamatory letter about a colleague occupied a position permitting him to claim the privilege, the court noted:

> "The privilege does not apply, however, where the tort arises out of the exercise of a 'ministerial' function. The difficulty of drawing the line between 'ministerial' and 'discretionary' functions again suggests the need for legislation which would provide relief under a principle which would render the distinction unnecessary."

*Shearer*, 274 Or at 454 n 9. That footnote does not help plaintiff for several reasons. First, it is *dictum* that has never been followed, not even in cases dealing with absolute privilege and citing *Shearer*. Second, in *Sandrock*, this court concluded that a police officer could claim the absolute privilege against a charge that he defamed the plaintiff; we then noted, "Because we conclude that the statements were absolutely privileged, we do not address the question of discretionary immunity." 58 Or App at 314 n 1. The necessary implication from that footnote is that the privilege *does* apply, regardless of whether the alleged defamation occurred in the performance of a discretionary or a ministerial function. The question of absolute privilege, in other words, is separate from and supersedes the question of whether the alleged defamation occurred in a discretionary or ministerial function.

■       Finally, plaintiff maintains that this case, like *Shearer*, should be remanded for trial because the evidence raises a question of fact as to whether the alleged defamation occurred in the performance of Whisler's official duties. In *Shearer*, as noted above, the court wrote:

> "The privilege is available to a defendant only if he publishes the defamatory matter in the performance of his official duties. If this case were to go to trial, it is possible that the evidence would show that defendant was neither required nor authorized to make statements evaluating members of the Department of Physical Education to members of the faculty other than defendant's superior. Were the evidence to show this, defendant would not be entitled to the protection afforded by the privilege."

*Shearer*, 274 Or at 455 (footnote omitted). The record in this case, however, does not permit a remand. Plaintiff's complaint alleges that Whisler

> "published to supervisory and managerial employees of defendant City false and defamatory statements concerning plaintiff, including but not limited to the statements made in the Memorandum [she submitted to her supervisor] * * *. As more fully alleged hereinafter, defendant Whisler published [false statements about plaintiff]."

The next paragraph of the complaint contains quotations from Whisler's memorandum to her supervisor. A complaint must contain a "plain and concise statement of the ultimate facts constituting a claim for relief without unnecessary repetition." ORCP 18 A. Consequently, we read plaintiff's complaint to include allegations related only to the statements Whisler made in, and in connection with the preparation of, her report.

In support of its motion for summary judgment, the city submitted Whisler's affidavit asserting that "[w]riting reports is a routine job duty for police officers and sergeants. As a supervisory sergeant, I also write mission statements, after action reports, or memoranda on events I perceive in the course of my job duties." That statement stands uncontradicted. Because she attended the Explorers' Conference in the course of her duties, her statement amounts to an undisputed assertion that she was performing her duty when she prepared the report containing the allegedly defamatory matter.

Further, nothing in the record beyond the mere allegations in plaintiff's complaint shows that Whisler made any defamatory statements to "supervisory and managerial employees" except in the performance of that duty. In order to avoid summary judgment, plaintiff "may not rest upon the mere allegations or denials of [his] pleading"; rather, he "must set forth specific facts showing that there is a genuine issue as to any material fact for trial." ORCP 47 D. To meet that burden, plaintiff repeatedly cites a statement in his affidavit that "I suspect other explorer advisors * * * may have either received or read the memo, or have been informed of its contents, again without legitimate reason." However, in

response to the city's motion, the trial court struck that portion of the affidavit, and plaintiff did not object. We find no other evidence in the record that, viewed in the light most favorable to plaintiff, asserts or raises an inference that Whisler's conduct exceeded the scope of the authority that she claimed, without contradiction, she was entitled to. Therefore, all of the allegedly defamatory statements were made in the performance of her duties.

Affirmed.