Argued and submitted September 13, 2002, affirmed May 12, appellant's petition for reconsideration filed June 4 allowed by opinion August 4, 2004

See 194 Or App 486, 95 P3d 235 (2004)

Tom JOHNSON,
*Appellant,*

*v.*

Nancy BROWN
and Deschutes County,
*Respondents.*

99CV0360AB; A115017

91 P3d 741

Roxanne L. Farra argued the cause for appellant. With her on the briefs was Roxanne L. Farra, P.C.

Mark Amberg argued the cause for respondents. With him on the briefs was Deschutes County Legal Counsel.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Linder, Judge.

LINDER, J.

.

## LINDER, J.

Plaintiff is a former supervisor of an adult criminal corrections program for Deschutes County. Deschutes County fired him after an investigation established that he had engaged in work-related misconduct. After he was fired, he brought this action against Nancy Brown, one of the employees whom he supervised, and against Deschutes County, seeking damages for defamation based on statements that Brown made during the county's investigation. The trial court granted summary judgment to defendants after concluding that Brown's statements were absolutely privileged. Plaintiff appeals, and we affirm.

The material facts are not disputed.[1] Plaintiff began working for Deschutes County in 1987. He was hired to manage and supervise the county's Community Justice Department Work Service Program, a program for criminal offenders sentenced to perform community service. Eventually, plaintiff's responsibilities expanded to include oversight of the work team community service and bench probation programs. As the person in charge of those programs, plaintiff supervised thousands of offenders assigned to court-ordered community service. He also supervised other county employees who worked with the programs, including Brown, who monitored offender compliance with the community service and work programs.

In 1999, as a result of information brought forward by Brown and other county employees, the county began an investigation into possible official misconduct and work-related wrongdoing by plaintiff. Plaintiff was placed on paid administrative leave pending the outcome of the investigation. The county hired a private investigator to act as its agent in conducting the investigation. The investigation lasted about a month and included interviews with approximately 15 current and former county employees. Current

---

[1] In reviewing the trial court's grant of summary judgment, we examine the facts "in the light most favorable to the nonmoving party to determine if the movant is entitled to judgment as a matter of law." *Wollam v. Brandt*, 154 Or App 156, 158, 961 P2d 219 (1998). In this case, the trial court concluded that, for purposes of the issues presented by the summary judgment motions, there were no disputed factual issues. Plaintiff does not argue otherwise on appeal.

employees were expected, as part of their job duties, to cooperate fully with the investigation.

Brown was among the employees interviewed. Her interview took place in a county office during her regular work hours, and she received her regular pay for the time that she spent in the interview. Consistently with what the county expected of its employees in the interviews, Brown tried to openly air her thoughts, perceptions, and observations of plaintiff during the investigative interview.

The investigator concluded that plaintiff had engaged in a variety of inappropriate activities, including the following: use of bench probationers' community service activities for personal gain; misappropriation or theft of items belonging to Deschutes County; misuse of county staff for personal gain; and incompetent and unethical performance as a supervisor. Based on the confirmation provided by the investigator, the county fired plaintiff. In response, plaintiff initiated a grievance hearing, as he was entitled to do under county personnel rules. The hearing was held before the Deschutes County Commission in May 1999. The commissioners voted unanimously to uphold the decision to fire plaintiff.

Plaintiff then brought this action against Brown and the county, seeking damages on the theory that certain of Brown's statements to the investigator were defamatory.[2] Defendants raised several affirmative defenses, including the following: (1) the statements were not defamatory because they were either true or represented Brown's opinions; (2) the statements were either absolutely or conditionally privileged; and (3) plaintiff was a "public official" within the meaning of *New York Times Co. v. Sullivan*, 376 US 254, 86 S Ct 710, 11 L Ed 2d 686 (1964) (defamation actions by public officials require a showing of actual malice).

---

[2] The allegedly defamatory statements were as follows: plaintiff had engaged in "illegal acts"; plaintiff had come to work "hung over"; Brown expected plaintiff to come to her home and shoot her horses; personal greed motivated plaintiff to file a claim based on his daughter becoming pregnant while incarcerated in the county jail; Brown believed that plaintiff was "into insurance fraud"; and money was missing from a Super Bowl pot at work and Brown believed that plaintiff was connected to its disappearance.

The parties filed a flurry of pretrial motions. Among those pertinent to this appeal were their cross-motions for summary judgment on various theories. Defendants moved for summary judgment on the ground that Brown's statements were protected by absolute privilege or, alternatively, by qualified privilege. Also, defendants sought a ruling that plaintiff was a "public official," thus requiring plaintiff to allege and prove that Brown acted with malice. Plaintiff filed two motions for summary judgment asking the trial court to conclude, among other things, that (1) none of Brown's statements was true or an expression of opinion; (2) some or all of Brown's statements were defamatory *per se*; (3) Brown, as a matter of law, had abused any qualified privilege that might attach to her statements; (4) no absolute privilege attached to Brown's statements; and (5) plaintiff did not qualify as a "public official" under the standard articulated in *New York Times*.

Each side prevailed on various aspects of their summary judgment motions. The trial court ruled as follows:

- The trial court concluded that all but two of Brown's statements were subject to a qualified privilege and therefore granted defendants' motion for summary judgment in part and denied that of plaintiff in that regard. As for the other two statements, the trial court concluded that it could not determine on this record whether those statements were subject to a qualified privilege. It therefore denied both motions for summary judgment insofar as those statements were concerned.

- The trial court concluded that, with the exception of one statement, triable issues of fact existed as to whether Brown abused any qualified privilege. The trial court therefore denied plaintiff's motion insofar as it sought a ruling that Brown abused any qualified privilege that attached to the remaining statements.

- The trial court concluded that plaintiff was not a "public official" within the meaning of *New York Times*, and accordingly denied defendants' motion for summary judgment and granted that of plaintiff in that regard.

- The trial court concluded that all statements made by Brown during her interview with the investigator were absolutely privileged and, therefore, granted defendants'

motion for summary judgment and denied that of plaintiff in that regard.

After the trial court's summary judgment rulings, the parties stipulated to a dismissal of any remaining triable issues and claims, pursuant to ORCP 54 A(1). The trial court then entered a final judgment, and this appeal followed.

On appeal, through multiple assignments and cross-assignments of error, the parties take issue with the trial court's various summary judgment rulings. Because it fully resolves this appeal, however, we reach only the issue of whether Brown's statements to the investigator were absolutely privileged. Although our rationale differs from the primary rationale on which the trial court relied, we agree that absolute privilege applies.

■■ In defense to an action for defamation, Oregon recognizes two forms of privilege: absolute and qualified. *DeLong v. Yu Enterprises, Inc.*, 334 Or 166, 170, 47 P3d 8 (2002). The defense of qualified privilege can be overcome if the alleged defamatory statements were made in bad faith or with malice. *Id.* Absolute privilege, on the other hand, is a complete bar to a claim of defamation and precludes liability regardless of the defendant's state of the mind. *Wallulis v. Dymowski*, 323 Or 337, 347-48, 918 P2d 755 (1996).

■ Historically, Oregon has recognized absolute privilege for defamatory statements in only a handful of situations. *DeLong*, 334 Or at 170; *Wallulis*, 323 Or at 348-50. As the Oregon Supreme Court has described, absolute privilege arises only in governmental settings:

> " 'The class of absolutely privileged communications is narrow and is practically limited to legislative and judicial proceedings and other acts of state, including, it is said, communications made in the discharge of a duty under express authority of law, by or to heads of executive departments of the state, and matters involving military affairs. The privilege is not intended so much for the protection of those engaged in the public service and in the enactment and administration of law, as for the promotion of the public welfare * * *.' "

*Grubb v. Johnson et al*, 205 Or 624, 631-32, 289 P2d 1067 (1955) (quoting with approval the "American Rule" from

*Libel and Slander,* 33 Am Jur 123 § 125 (1941)). Consistently with that description, Oregon cases have applied absolute privilege to governmental settings in which "the public's interest in the unhampered operation of the government, when exercising such functions, outweighs an individual's interest in the preservation of reputation." *Wallulis,* 323 Or at 349; *see also Ramstead v. Morgan,* 219 Or 383, 387, 347 P2d 594 (1959) (the privilege exists for those "certain relations of life in which it is so important that the persons engaged in them should be able to speak freely * * * in order that their duties may be carried on freely and without fear of any action being brought against them" (internal quotation omitted)). Communications protected by absolute privilege include those made in the course of, or sufficiently incidental to, judicial and quasi-judicial proceedings, *see, e.g., Ramstead,* 219 Or at 388; *Moore v. West Lawn Mem'l Park,* 266 Or 244, 249-51, 512 P2d 1344 (1973); statements made by legislative officials in the course of their duties, *see, e.g., Noble v. Ternyik,* 273 Or 39, 41-45, 539 P2d 658 (1975); and statements made by executive branch officials in the performance of their governmental duties, *see Shearer v. Lambert,* 274 Or 449, 452-54, 547 P2d 98 (1976).

In their motions for summary judgment, the parties approached the issue by comparing and contrasting this case with those in which the Oregon Supreme Court and this court have applied absolute privilege to statements made in the initiation of judicial and quasi-judicial proceedings.[3] The premise of their arguments was, at least chiefly, that absolute privilege either applies or does not apply on that basis. To a lesser degree, the parties also debated whether absolute privilege should apply as a policy matter to a public employee who makes defamatory statements in connection with the investigation of another public employee for alleged work-related misconduct. Neither side cited authority on the latter proposition, however.

---

[3] *See, e.g., Binder v. Oregon Bank,* 284 Or 89, 585 P2d 655 (1978); *Moore v. West Lawn Mem'l Park,* 266 Or 244, 512 P2d 1344 (1973); *Ramstead,* 219 Or 383, 347 P2d 594 (1959); *DeLong v. Yu Enterprises, Inc.,* 170 Or App 609, 13 P3d 1012 (2000), *rev'd,* 334 Or 166, 47 P3d 8 (2002); *Wollam,* 154 Or App at 156-64.

In resolving the absolute privilege issue, the trial court analyzed this case by analogizing it to those involving the initiation of judicial or quasi-judicial proceedings. The trial court observed that absolute privilege has not been limited to circumstances in which the allegedly defamatory statements were made in the context of an existing legal proceeding, but extends also to statements made when there was a "distinct possibility" of legal action. *See, e.g., Wollam v. Brandt*, 154 Or App 156, 164, 961 P2d 219 (1998). The trial court concluded that Brown's statements to the investigator were sufficiently causally connected to the later grievance proceeding as to have "precipitated" that proceeding, thus making absolute privilege applicable. Significantly, by way of footnote in its letter opinion, the trial court further observed that, although the case law did not appear to make the distinction, "[a]lleged on-the-job misconduct of *public* employees may well be a matter of substantially greater importance than misconduct of private sector employees." (Emphasis in original.)

■ On appeal, the parties renew the arguments that they made below. Plaintiff urges that the investigation during which Brown made the allegedly defamatory statements was too remote from any judicial or quasi-judicial proceeding to be protected by absolute privilege. In particular, plaintiff emphasizes that the county's internal investigation was not itself a quasi-judicial action, nor did the county undertake it in order to initiate such an action. Rather, the only quasi-judicial action involved in this case was the grievance hearing, which plaintiff initiated. Plaintiff points out that, when Brown was interviewed by the investigator, no evidence suggests that plaintiff already planned to initiate such a grievance, and, in fact, the grievance hearing was not held until three months later. Finally, plaintiff acknowledges that the trial court also suggested that "the fact that plaintiff was a public employee might distinguish this case from this court's prior precedent," but he urges that no authority or sound reasoning supports that distinction.

■ In response, defendants argue that absolute privilege logically should apply to statements made by governmental employees in the course of an internal investigation of this kind. Relying on cases in which absolute privilege

attaches for statements made during or in the initiation of quasi-judicial proceedings, defendants urge that the county's investigation was a preliminary step to any grievance procedure and therefore presented the "clear[ ] * * * possibility" of litigation over plaintiff's discharge. Defendants further argue that absolute privilege should apply because Brown made her statements as part of her duties as a county employee:

> " 'The defense of absolute privilege is most commonly available when the defamatory statements have some relation to a governmental function. Public policy considerations dictate that participants in the governmental process be encouraged to speak candidly, uninhibited by the fear of possible civil liability for defamation. *The absolute privilege thus extends to public officials at all levels of government with respect to statements made in the performance of their official duties*, and in more limited circumstances to private citizens who participate in the governmental process.' "

(Quoting 1 *Torts* § 5.28, 5-37 (OSB CLE 1992); emphasis in original.) Defendants, however, cite no case law or other authority for their position in that regard.[4]

 As that description suggests, the parties' arguments on appeal center, as they did before the trial court, on whether Brown's statements are absolutely privileged because they were sufficiently connected to the initiation of quasi-judicial proceedings. To a lesser extent, the parties also debate whether Brown's status as a public employee engaged in the performance of her official duties renders the statements that she made during the investigative interview absolutely privileged. As interesting as the parties' central debate may be in this context, we need not resolve it.[5] This

---

[4] As noted, that portion of defendants' argument is quoted from a continuing legal education publication. Continuing legal education materials are not authority of any kind, although they often cite authority that is either persuasive or binding. That particular passage did not do so, however. We therefore treat the passage as defendants' argument, not as a citation to authority.

[5] The discharge of public employees presents a distinct circumstance, one not explored in past Oregon cases involving allegedly defamatory statements. Unlike employment in the private sector, public employment in a context such as this is a "property right" that gives rise to due process procedural safeguards. *See generally Tupper v. Fairview Hospital*, 276 Or 657, 661-62, 556 P2d 1340 (1976). The procedural process due an employee before he or she may be suspended or discharged includes pretermination notice and informal opportunity to be heard, with a right to either a full pre- or post-termination hearing at the employee's instance,

case more readily and appropriately should be analyzed on the theory that the parties more lightly explore—namely, that absolute privilege applies because of Brown's status as a public official engaged in the performance of her official duties. Framing the inquiry in those terms renders the analysis straightforward.

The controlling authority is *Shearer*. In that case, the Oregon Supreme Court considered whether to adopt absolute privilege for executive officers who make allegedly defamatory statements in the course of performing their official duties. *Shearer*, 274 Or at 452-53. The court held that absolute privilege should apply in that circumstance for the same reasons that the privilege applies in the judicial and legislative contexts—that is, because the public interest in "fearless action on the part of public officers" outweighs the interests of persons who might be damaged by those actions. *Id.* at 453. The next question for the court was whether the privilege should be limited to high-level public officials or extended to "lesser" executive or administrative officers. *Id.* at 454. The court noted that the privilege had been extended to judicial and quasi-judicial officers "at all levels" and to members of "subordinate" legislative bodies. *Id.* It further observed that, although other jurisdictions were divided on the question, some had "extended the privilege to inferior state officers no matter how low their rank or standing." *Id.* The court concluded that there was no sound reason to limit absolute privilege in the executive branch context to only high-ranking officials "because, starting with the premise that the privilege is designed to free public officers from intimidation in the discharge of their duties, we are unable to

---

depending on the government's interest in expeditiously removing an unsatisfactory employee. *Id.* at 663-65. In all events, constitutionally mandated procedural rights accrue from the moment, as here, that a public employer places its employee on administrative leave pending an investigation and discharge decision. And those rights include, at some point in the process, a quasi-judicial hearing, although the right to a hearing may be the employee's to invoke. An interesting and novel question is posed as to whether, given the constitutionally mandated procedural protections that attach in this setting, an investigation into official misconduct under circumstances such as these can be said to "initiate" any quasi-judicial hearing that follows a discharge, since the right to such a hearing—and the employer's obligation to conduct it—arises because of the investigation and its outcome.

explain why this policy would not apply equally to inferior as well as to high-ranking officers." *Id.*

We applied the holding of *Shearer* in *Chamberlain v. City of Portland*, 184 Or App 487, 490-91, 56 P3d 497 (2002), a case factually analogous to this one. The plaintiff in *Chamberlain* was a police officer who allegedly was defamed by Whisler, a police sergeant. The alleged defamation occurred when Whisler was required, as part of her job duties, to prepare a written report describing the plaintiff's conduct on an assignment that the two officers had jointly undertaken. We held that Whisler, as a sworn police sergeant, was an executive officer and thus entitled to absolute immunity regardless of the ministerial nature of the duty (*i.e.*, the preparation of a report) that she was engaged in when she made the statements in question. *Id.* at 491.

The same conclusion follows in this case. Brown was a Deschutes County employee working in the adult criminal corrections program. Her responsibilities were largely ministerial in nature, but they involved the administration of the community service, work, and related bench probation programs for convicted offenders.[6] She thus was an executive officer, that is, a person with " 'authority to exercise some portion of the sovereign power of the state, either in making or administrating, or executing the laws.' " *Chamberlain*, 184 Or App at 491 (quoting *Kaminsky v. Good et al.*, 124 Or 618, 627, 265 P 786 (1928)).[7] Brown was required, as a duty of her employment, to meet with the investigator and to cooperate fully in providing him with her thoughts, perceptions, and

---

[6] More specifically, the record establishes that Brown's duties included interviewing probationers when they were first sentenced to bench probation or community service; obtaining necessary information for the corrections department records; monitoring probationers' compliance with work programs and community service; sending warning letters to probationers who were out of compliance; and preparing affidavits and arrest warrants, for a judge's signature, for those probationers who violate the conditions of their probation.

[7] In *Chamberlain*, we also cited with approval *Buckley v. Valeo*, 424 US 1, 126, 96 S Ct 612, 46 L Ed 2d 659 (1976) ("any appointee exercising significant authority pursuant to the laws of the United States is an Officer of the United States"), and *Black's Law Dictionary* 1113 (7th ed 1999) (defining public officer as "a person holding public office under a national, state, or local government and authorized by that government to exercise some specific function"), for definitions of an executive officer. *Chamberlain*, 184 Or App at 491. Those definitions are equally apt here.

observations regarding plaintiff. The interview occurred during her regular work hours, in the county offices, and she was paid her regular salary for the time she spent in the interview. *A fortiori*, she was performing her official duties when she made the allegedly defamatory statements. Absolute privilege therefore applies to Brown and, by extension, to the county. *See Shearer*, 274 Or at 454 (absolute privilege for executive officials who make allegedly defamatory statements in the course of their official duties); *Chamberlain*, 184 Or App at 491 (same); ORS 30.265(2) (every public body is immune from liability for acts of its employees where the employees are immune from liability).

Plaintiff, in response to both the trial court's and defendants' suggestions that absolute privilege should apply because of Brown's status as a public employee cooperating with the county's investigation of work-related misconduct, offers three responses. First, he asserts that no authority suggests that absolute privilege should apply on that basis. That assertion, however, is mistaken. Although the parties did not discover that authority, *Shearer* and *Chamberlain* are on point.

Second, plaintiff relies on a series of cases for the proposition that only qualified privilege applies when one employee defames another in the course of commenting on job performance. All of the cases on which plaintiff relies, however, involved private sector employees commenting on coworkers.[8] That distinction, for obvious reasons, makes all the difference.

Finally, plaintiff asserts, by way of a footnote in his reply brief, that the affirmative defense pleaded in defendants' answer was too limited to raise a claim of absolute privilege based on Brown's status as an executive officer engaged in the performance of her official duties. Defendants' pleading was not so narrow, however. To be sure, defendants specifically alleged that Brown's statements were "preliminary to or in the course of a quasi-judicial proceeding" and

---

[8] *Bickford v. Tektronix, Inc.*, 116 Or App 547, 842 P2d 432 (1992); *Worley v. OPS*, 69 Or App 241, 686 P2d 404, *rev den*, 298 Or 334 (1984); *Benassi v. Georgia-Pacific*, 62 Or App 698, 662 P2d 760, *modified on other grounds on recons*, 63 Or App 762, 667 P2d 532, *rev den*, 295 Or 730 (1983).

were therefore absolutely privileged. But defendants labeled the defense broadly ("Absolute Privilege") and, consistently with that broad labeling, expressly incorporated several earlier allegations of the answer. The incorporated allegations included defendants' admission of plaintiff's allegation that Brown's statements were made in the course and scope of her employment with Deschutes County. Thus, as pleaded, defendants' assertion of absolute privilege in its answer was broad enough to encompass the factual circumstance that Brown's statements were made in the course of executing her official duties.

In sum, the trial court correctly determined that absolute privilege applies to Brown's statements in these circumstances. The grant of summary judgment in defendants' favor was therefore proper.

Affirmed.