Argued and submitted May 27, affirmed July 28, petition for review allowed
November 4, 2021 (368 Or 702)
See later issue Oregon Reports

Thomas LOWELL,
*Plaintiff-Appellant,*

*v.*

MEDFORD SCHOOL DISTRICT 549C,
*Defendant-Respondent,*

*and*

Stephanie MALONE et al.,
*Defendants.*

Jackson County Circuit Court
18CV19782; A173221

497 P3d 797

On appeal, plaintiff challenges the trial court's grant of summary judgment in favor of defendant, determining that defendant was entitled to absolute privilege in this defamation action. Plaintiff argues that the court erred because the absolute privilege defense applies only to statements of public officers who exercise policy-making governmental authority, but not to mere employees engaged in operational functions. *Held*: The defense of absolute privilege applies to all employees of a public body when the defamatory statement was made in the performance of the employee's official duties.

Affirmed.

David G. Hoppe, Judge.

Linda K. Williams argued the cause and filed the briefs for appellant.

Rebekah R. Jacobson argued the cause for respondent. Also on the brief was Garrett Hermann Robertson PC.

Before Ortega, Presiding Judge, and Shorr, Judge, and Landau, Senior Judge.

LANDAU, S. J.

Affirmed.

**LANDAU, S. J.**

At issue in this defamation case is whether the affirmative defense of absolute privilege applies to statements of public employees. Plaintiff argues that the defense applies only to statements of public "officers" who exercise "policy-making governmental authority." Defendant Medford School District contends that the defense applies to statements of any public employees made in the course and scope of their employment. The trial court agreed with defendant, entered summary judgment in favor of defendant on plaintiff's defamation claim, and dismissed the remaining claims with prejudice. We affirm.

The relevant facts are not in dispute. Plaintiff provided piano tuning services to Medford School District and assisted in producing concerts performed in district facilities. In the course of assisting in the sound and lighting set-up for a concert at the North Medford High School, plaintiff noticed an echo near the stage. He complained to a school theater technician, Malone, but he felt that Malone did not adequately respond. Meanwhile, Malone told her supervisor, Bales, that she suspected that plaintiff had been intoxicated, "smelled of alcohol," and "this was not the first time." Bales repeated that to Armstrong, a district support services assistant. Armstrong, in turn, sent emails summarizing Malone's suspicions to three other district employees, including the supervisor of purchasing. Armstrong expressed concerns that appearing on district property under the influence of intoxicants violated district policy and the terms of plaintiff's contract. Medford School District Policy KG-AR (Use of School Facilities) provides that "[u]se of tobacco products or alcoholic beverages is not permitted on school property." Similarly, Policy KGB (Public Conduct on District Property) provides that "[n]o person on district property or grounds, including parking lots will *** possess, consume, give or deliver unlawful drugs and/or alcoholic beverages." Anyone who violates those policies may be "ejected from the premises and/or referred to law enforcement officials."

Plaintiff initiated this action for defamation initially against Malone, Bales, and Armstrong, based on the

statements that he had been intoxicated on school district premises. The trial court allowed the substitution of the district for the individual defendants, based on allegations that the individual defendants were acting in the course and scope of their employment when they made the statements at issue. The district answered, alleging a number of affirmative defenses, including the absolute privilege that applies to statements of public employees made in the course and scope of their employment. The district alleged that, because its employees were immune from liability by virtue of the privilege, the district was immune as well. *See* ORS 30.265(5) (providing that public bodies are immune from liability for any claim arising from actions of officers, employees, or agents who are immune).

The district moved for summary judgment on that affirmative defense, contending that there was no dispute that the statements at issue were made by public employees in the performance of their official duties. Plaintiff filed his own motion for partial summary judgment on the same affirmative defense. He argued that the absolute privilege did not apply to the statements made by the district's employees because the employees were merely "low level employees performing ministerial tasks." The trial court granted the district's motion. The court concluded that "[t]he alleged defamatory statements were made by public officials in the course of their official duties and they were entitled to absolute privilege."

On appeal, plaintiff argues that the trial court erred in granting the district's motion. More specifically, plaintiff argues that the court erred in concluding that the absolute privilege applies in this case. According to plaintiff, the privilege applies only to statements made by a public "officer" who "exercises judgment in making complex policy decisions." The privilege does not apply, plaintiff argues, to mere employees of a public body. In this case, he contends, the record shows that the individuals whose statements are at issue were employees who exercised only "operational functions." There is no record, plaintiff complains, of "policy choices" of the sort that would justify the application of the absolute privilege.

The district responds that the relevant case law makes clear that the absolute privilege applies to any employee of a public body, provided that the statement at issue was made in the performance of the employee's official duties. In this case, the district argues, there is no dispute that the statements at issue were made by employees of a public body and that it was their duty under district policies to notify others to ensure the safe use of district facilities.

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 413, 939 P2d 608 (1997). The relevant facts here, as we have noted, are not in dispute. The sole issue is whether the statements of the district's employees at issue are subject to absolute privilege.

The common law recognizes two forms of privilege in a defamation action: an absolute privilege and a qualified privilege. *DeLong v. Yu Enterprises, Inc.*, 334 Or 166, 170, 47 P3d 8 (2002). An absolute privilege acts as a complete bar to liability for defamation. *Wallulis v. Dymowski*, 323 Or 337, 347-48, 918 P2d 755 (1996). A qualified privilege does not act as a complete bar to liability but requires that the plaintiff prove that the defendant abused the privilege as a condition of establishing liability. *Bank of Oregon v. Independent News*, 298 Or 434, 437, 693 P2d 35, *cert den*, 474 US 826 (1985).

In *Shearer v. Lambert*, 274 Or 449, 547 P2d 98 (1976), the Oregon Supreme Court held that an absolute privilege applies to executive officers of public entities, so long as the statements at issue were made in the course of their official duties. Significantly for our purposes, the court concluded that the privilege is available to all executive officers, not just those of special rank. *Id*. at 454. The court explained that, although some authorities limit the privilege to the governor, the attorney general, and the heads of state departments, others have extended the privilege "to inferior state officers no matter how low their rank or standing." *Id*. The court said that it felt "compelled to adopt the latter view because, starting with the premise that the

privilege is designed to free public officers from intimidation in the discharge of their duties, we are unable to explain why this policy would not apply equally to inferior as well as to high-ranking officers." *Id.*

In *Chamberlain v. City of Portland*, 184 Or App 487, 56 P3d 497 (2002), we concluded that the absolute privilege recognized in *Shearer* applied to allegedly defamatory statements that a police sergeant made in a written report about the conduct of a fellow police officer. The plaintiff had argued that the absolute privilege did not apply to the sergeant's statements because a police sergeant was not a sufficiently high-ranking official and because the sergeant's statements were made in the process of engaging in a merely "ministerial function." We rejected both contentions. We began by noting that, as a sworn police sergeant, the defendant was an executive officer. *Id.* at 491. We stated that an "officer" is a person "with 'authority to exercise some portion of the sovereign power of the State, either in making or administrating, or executing the laws.'" *Id.* (quoting *Kaminsky v. Good, et al.*, 124 Or 618, 627, 265 P 786 (1928)). As to the plaintiff's argument that the officer held insufficient rank, we observed that in *Shearer* the Supreme Court adopted the view that the privilege applies to "inferior state officers no matter how low their rank or standing." *Chamberlain*, 184 Or App at 491 (quoting *Shearer*, 274 Or at 454). As to the nature of the sergeant's duties, we concluded that the privilege applies "regardless of whether the alleged defamation occurred in the performance of a discretionary or ministerial function." *Id.* at 492.

Similarly, in *Johnson v. Brown*, 193 Or App 375, 91 P3d 741 (2004), the defendant was "a Deschutes County employee working in the adult criminal corrections program" who had reported that her supervisor had engaged in work-related misconduct. The supervisor was fired and brought an action for defamation against the employee and the county. The defendants argued that the absolute privilege for public officials applied. The plaintiff contested whether the privilege applies to a "public employee" who makes defamatory statements in connection with a misconduct investigation. *Id.* at 380-81.

We noted that the defendant employee's responsibilities were "largely ministerial," involving the administration of community service and related bench probation programs for criminal offenders. We nevertheless concluded that the employee was an "executive officer" for the purposes of the absolute privilege. Citing *Chamberlain*, we explained that the privilege broadly applies to persons who "exercise some portion of the sovereign power of the state, either in making, or administering, or executing the laws." *Id*. at 385.

And in *Christianson v. State of Oregon*, 239 Or App 451, 244 P3d 904 (2010), *rev den*, 350 Or 297 (2011), we held that the absolute privilege applied to allegedly defamatory statements that a Department of Human Services (DHS) supervisor made about an employee. We began by observing that, in *Shearer*, "the Supreme Court held that an employee of an executive agency has an absolute privilege to make defamatory statements in the exercise of official duties, even if * * * the person who made the statements is a lower-level employee." *Id*. at 459. We then noted that the record showed that it was "beyond dispute that [the supervisor] was an employee of DHS, an executive agency, and that she rendered her reference in the exercise of official duties." *Id*. at 460. That, we held, was sufficient to establish that the absolute privilege applied. *Id*.

It may be argued that there is some tension between *Johnson* and *Chamberlain*, on the one hand, and *Christianson* on the other. In concluding that the absolute privilege applied, *Chamberlain* first determined that the defendant police sergeant was a public "officer." *Johnson* likewise concluded that the privilege applied to the statements of a county employee because her "largely ministerial" duties in administering a corrections program made her a public "official" or "officer." In both cases, we explicitly addressed whether the duties of the employee were such that they were properly considered public "officers." In *Christianson*, though, the court skipped that analysis and simply declared that the privilege applies to any public employees in the performance of their duties.

Whatever tension exists between those decisions, the fact remains that *Christianson* is plainly controlling. Under *Christianson*, the statements at issue here were made

by defendant's employees, and so long as the statements were made in the performance of their duties, the absolute privilege applies.

Plaintiff contends that *Christianson*'s "loosely worded description" of the law goes beyond *Shearer* and should be disregarded. We need not address that contention, because even if plaintiff were correct that *Christianson* went too far in declaring that the absolute privilege applies to all public employees, in view of *Chamberlain* and *Johnson*, we would still conclude that the privilege applies here. Both decisions applied a broad definition of "officer" that includes any person who administers or executes the laws, regardless of how ministerial and nondiscretionary their job duties. *Johnson*'s application of that test was especially expansive. The court in that case concluded that a county employee with "largely ministerial" duties involving the administration of a county correction program who had reported possible supervisory misconduct was a public "officer" for the purposes of the absolute privilege against defamation. 193 Or App at 385. In this case, there is no suggestion that the duties of the employees whose statements are at issue in this case did not similarly include administering or executing the laws, only that they cannot be regarded as "officers" because their duties were "ministerial" and not requiring "judgment in making complex policy decisions." Both *Chamberlain* and *Johnson*, however, squarely reject those contentions.

The remaining question is whether the statements at issue were made in the performance of official duties. Plaintiff does not dispute that. It was the uncontested fact that the individuals were acting in the course and scope of their employment that led the trial court to authorize the substitution of the district in the first place. In any event, it is not contested that consuming alcoholic beverages on school district premises violated district policies and that those policies expressly authorized the reporting of any such violations. Nor is it contested that the supposedly defamatory statements were made by employees reporting their concern that the policy may have been violated. Plaintiff insists that "trying to follow policy" is insufficient to trigger the absolute privilege in the absence of "the use of discretion

in the sense that a policy decision is required." As we have noted, though, the applicability of the absolute privilege does not turn on whether discretion is exercised.

Plaintiff argues that applying the absolute privilege to this case cannot be reconciled with the guarantee in Article I, section 10, of the Oregon Constitution, that every person "shall have remedy by due course of law." It is doubtful that plaintiff preserved such a contention. Although he mentioned the remedy guarantee in his arguments to the trial court, he offered no explanation as to why applying the privilege here would violate the constitution. Even on appeal, beyond asserting that the guarantee is in some way "implicate[d]," plaintiff does not explain why the application of an absolute privilege violates it. Rather, plaintiff merely refers to an "unanswered question" of how to conform the absolute privilege to the remedy clause. Given that various absolute privileges against defamation liability have been a part of the common law since at least the eighteenth century, *see, e.g.*, *King v. Skinner*, 98 Eng Rep 529, 530 (KB 1772) (recognizing absolute privilege for statements made in judicial proceedings); *Yates v. Lansing*, 5 Johns 282, 291 (NY Sup Ct 1810) (an absolute privilege "is to be found in the earliest judicial records"), a challenge to their constitutionality on remedy-clause grounds requires more than a vague assertion that applying such a privilege in this case runs afoul of Article I, section 10. *See, e.g.*, *State v. Buyes*, 280 Or App 564, 571 n 3, 382 P3d 562 (2016) (undeveloped argument that constitutional violation "can result" from joinder insufficient to preserve contention that joinder violated the constitution in that case). Plaintiff suggests that, at the least, the existence of the remedy guarantee warrants construing the absolute privilege narrowly. That, however, is a matter for the Supreme Court.

Affirmed.